261 So.2d 589 (1971)
261 La. 850
Pearly J. BONNETTE et al.
v.
Honorable C. Edward KARST, Mayor, et al.
No. 51467.
Supreme Court of Louisiana.
November 8, 1971.
Dissenting Opinion November 18, 1971.
On Rehearing March 27, 1972.
Rehearing Denied May 1, 1972.
*590 Gist, Methvin & Trimble, Howard B. Gist, Jr., Alexandria, for defendants-appellants.
Gravel, Roy & Burnes, Chris J. Roy, Camille F. Gravel, Jr., Alexandria, for plaintiffs-appellees.
Neblett, Fuhrer & Hunter, Robert B. Neblett, Jr., Alexandria, for intervenors.
Peters, Ward & Phillips, S. Patrick Phillips, Shreveport, amici curiae.
HAMLIN, Justice.
Defendants, the City of Alexandria; its Mayor and Commissioner of Public Health and Safety, Honorable C. Edward Karst; *591 its Commissioner of Finance and Public Utilities, Honorable Carroll E. Lanier; and its Commissioner of Streets and Parks, Honorable O'Hearn L. Mathews; and intervenors, Local 540, Alexandria Fire Fighters Association, AFL-CIO, Board of Trustees of the Firemen's Pension and Relief Fund and Willis L. West, appeal from a judgment of the trial court, sitting en banc as a three judge court, which (1) ordered that a permanent injunction issue, directed to the defendants, restraining, enjoining and prohibiting each of them from taking any action under the provisions of LSA-R.S. 42:691 looking toward the separation or retirement of Pearly J. Bonnette, Lionel C. Bergeron, Sam Domico, Jr., and John Fertitto from their positions as permanent classified officers and employees in the Fire Department of the City of Alexandria, Louisiana; and, (2) decreed that "R.S. 42:691 is hereby declared to be unconstitutional in its application, insofar as any effort has been or may be made to make that statute applicable to the plaintiffs in this proceeding in connection with their employment with the City of Alexandria, Fire Department."
After being notified by letter of April 2, 1971, written by C. Edward Karst, appointing authority and Mayor of the City of Alexandria, that they were being placed on retirement pursuant to the provisions of LSA-R.S. 42:691,[1] Pearly J. Bonnette, Lionel C. Bergeron, Sam Domico, Jr., and John Fertitto[2] instituted, April 28, 1971, the present declaratory judgment and injunctive proceedings against the defendants; they prayed for the judgment decreed, supra, by the trial court.
Local 540, Alexandria Fire Fighters Association, AFL-CIO, Board of Trustees of the Firemen's Pension and Relief Fund, and Willis L. West intervened in the matter and prayed that plaintiffs' suit be dismissed.
In answer to plaintiffs' petition, defendants prayed that the trial court hold that the provisions of LSA-R.S. 42:691 are applicable to the Alexandria Fire Department and that plaintiffs' suit be dismissed.
Honorable Jack P. F. Gremillion, Attorney General of the State of Louisiana, appeared and submitted to the trial court the matter of the constitutionality of the involved statute and the relief sought.
Defendants and intervenors filed a declinatory exception in which they averred that the trial court was without jurisdiction over the subject matter involved because Art. XIV, Sec. 15.1(31), of the *592 Louisiana Constitution granted the district courts limited jurisdiction only to review a prior decision made by the Alexandria Fire and Police Municipal Civil Service Board; that plaintiffs had made no application to the Board to review their discharge, and that consequently, the Board had rendered no decision reviewable by the court. They further averred that the trial court had neither original jurisdiction nor appellate jurisdiction over the subject matter. Defendants and intervenors also filed peremptory exceptions of prescription and no cause of action.
The trial court overruled all of the exceptions, and its decision with respect to jurisdiction stated:
"It is the opinion of this Court that these letters written to these parties are not discharges or contemplated discharges as envisioned or contemplated by the Constitution, Article 14, Section 15.1, subparagraph 31. But that mandatory retirement is a change of status other than discharge and certainly corrective or disciplinary action. And that being the case, then this Court does have jurisdiction to hear this matter. It is the position of this Court that the word discharge carries some connotation other than a mandatory retirement. A discharge is a complete severance of that employee with prejudice and that retirement, of course, is not of that nature. So the exception to the jurisdiction is overruled."
The trial court rendered judgment after hearing, and the present appeal ensued.
Defendants and intervenors assign the following errors to the judgment of the trial court:
"1. The district court erred in taking jurisdiction over the subject matter of the proceeding.
"2. The district court erred in holding that plaintiffs' rights of action had not prescribed.
"3. The district court erred in holding that firemen were granted life tenure under the Louisiana Constitution making any retirement statutes unconstitutional when applied to firemen."
Amicus Curiae, Professional Firefighters Association of Louisiana, AFL-CIO, urges that the trial court erred in finding the provisions of LSA-R.S. 42:691 to be unconstitutional, insofar as applied to plaintiffs, members of the classified service of the Alexandria Fire Department.
Plaintiffs submit that the judgment of the trial court should be affirmed, and state: "The long and short of this entire case is that firemen and policemen subject to the provisions of Article 14, Section 15.1, have special and unique constitutional civil service protection, are entitled to tenure during good behavior and are subject to removal from their employment only in the manner and for the reasons set forth in the Constitution. Statutes which provide to the contrary must yield."
Counsel for defendants and intervenors contend that in a civil service dispute involving policemen and firemen, a state district court does not have original jurisdiction but only a form of limited appellate jurisdiction.
Art. XIV, Sec. 15.1(31), La.Const. of 1921, as amended, provides:
"Any regular employee in the classified service who feels that he has been discharged or subject to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand in writing, a hearing and investigation by the board to detemine the reasonableness of the action. The board shall grant the employee a hearing and investigation within thirty days after receipt of the written request." See, LSA-R.S. 33:2501.
The letters ordering mandatory retirement of plaintiffs were written on April 2, 1971, and received on April 3, 1971. *593 Plaintiffs did not apply to the Alexandria Fire and Police Municipal Civil Service Board for hearing; they chose not to follow the constitutional article, supra; they instituted, as stated supra, the instant proceedings on April 28, 1971, less than 30 days after receipt of their notice of mandatory retirement.
We agree with the trial court that a district court has jurisdiction of a matter such as the instant one. Herein, an appeal or application to the Civil Service Board would have been a vain and useless gesture. That body is without power to determine vel non the constitutionality of a State statute, and plaintiffs challenged the constitutionality of LSA-R.S. 42:691 and prayed for declaratory and injunctive relief. We find that the district court was the proper and only body which could grant or deny plaintiffs' demands. Having determined that the trial court had jurisdiction of this matter, it follows that the peremptory exceptions are without merit and that the trial court properly overruled them.
Chadwick v. Department of Highways of the State, 238 La. 661, 116 So.2d 286 (1959) is not apposite to this matter. Compulsory retirement was involved in the Chadwick case, but the retired employee saw fit to appeal to the Civil Service Commission and filed his appeal untimely. The Commission, however, found that the order of retirement was void ab initio. This Court sustained the motion to dismiss Chadwick's appeal to the Civil Service Commission on the ground that the appeal was not timely taken pursuant to Rule 13.12 of the Civil Service Commission. We said, however, "Under our view on the merits of the motion to dismiss it is not necessary for us to discuss what authority if any the Civil Service Commission had to consider Act 54 of 1958 [LSA-R.S. 42:691] unconstitutional or for us to express any view as to its constitutionality."
We now approach a determination of the constitutionality of LSA-R.S. 42:691 in the light of Art. XIV, Sec. 15.1(30)a, La. Const. of 1921, as amended.
LSA-R.S. 42:691 provides:
"Compulsory retirement at age sixty-five; exceptions; earlier mandatory retirement ages not extended; teachers and college presidents
"A. Effective January 1, 1959, any employee of the state of Louisiana, or any political subdivision thereof, except elected officials and department heads appointed and commissioned by the governor, who is insured under the Federal Social Security Law, or who is a member of any public employees' retirement system, and for whom the state or any political subdivision thereof has made or is liable for contributions toward his retirement, who shall have attained the age of sixty-five years shall be separated from the public service by his appointing authority if such employee is eligible for retirement under either the Social Security Act or the retirement system of which he is a member. If such employee is not eligible for retirement under either the Federal Social Security Act or the retirement system of which he is a member separation shall occur whenever he shall become eligible for retirement under either system or upon attainment of age seventy, whichever event shall first occur. In any case in which the appointing authority certifies that the continuance in service of the employee who shall have attained the age of sixty-five or over would be advantageous to the public service by reason of his expert knowledge and qualifications, such employee may be continued in the public service by his appointing authority beyond the age of sixty-five for periods of one year.
"B. Nothing contained in this Section shall be construed as granting any extension to any member of a retirement system which has a provision requiring an earlier mandatory retirement age; and provided further that nothing herein contained *594 shall be construed to in any manner affect the mandatory retirement age for teachers or college presidents." Acts 1958, No. 54, §§ 1, 2.
Art. XIV, Sec. 15.1(30), provides:
"a. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
"* * *
"(13) The development of any defect of physical condition which precludes the employee from properly performing the duties of his position or the development of any physical condition that may endanger the health or lives of fellow employees.
"* * *" (Emphasis ours.)
In Art. XIV, Sec. 15.1(30), no mention is made of "retirement" as a cause for separation from a Fire Department. The article specifically states that tenure shall be during good behavior.[3]
Webster's New World Dictionary of the American Language defines "tenure" as follows:
"1. a holding, as of property, office, etc. 2. the right to hold or possess something. 3. the length of time something is held: as tenure of office. 4. conditions of possession. 5. permanent possession, as of an office or position."
Counsel for the defendants and intervenors submit that in holding LSA-R.S. 42:691 unconstitutional in its application to firemen, the district court gave it a strained and super-technical interpretation never intended by the people or the Legislature. They contend that virtually all retirement systems contain a mandatory retirement age and submit that the provisions of LSA-R.S. 42:691 are in no way inconsistent with or repugnant to Art. XIV, Sec. 15.1 (30)a, La.Const. of 1921, as amended.
Amicus Curiae contends that the constitutional provision was not intended to prohibit the Legislature from establishing a mandatory retirement age for its firefighters and policemen. It argues that if the decision of the trial court is allowed to stand, it will wreak havoc with a majority of the firefighters' pension systems in the State of Louisiana; a vast majority of pension systems for firefighters have a mandatory retirement age of sixty-five. It states "The resulting effect on the firefighters' pension systems would be chaotic. It is essential for the proper maintenance of an actuarially sound pension system that the trustees administering the system be able to predict with some reasonable degree of certainty the number of persons expected to retire in a given year."
It is now generally recognized that courts cannot annul an act of the Legislature on any other ground than repugnance to the Constitution. Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49, 58. It is elementary that an act of the Legislature is presumed to be legal, and that the judiciary is without right to declare it unconstitutional unless that is manifest. Schwegmann Bros. v. Louisiana *595 Board, Etc., 216 La. 148, 43 So.2d 248; Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400. "It is a rudimentary tenet of statutory construction in this State that `When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.' Article 13 of the Civil Code." State Through Dept. of Highways v. Bradford, 242 La. 1095, 141 So.2d 378, 386. Constitutional provisions are subject to the same rule of interpretation and construction as are applicable to other laws. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, 486; Roberts v. City of Baton Rouge, 236 La. 521, 108 So. 2d 111.
The trial court stated that discussion before it centered around the question of whether retirement for less than full pay affects tenure, and it concluded that retirement of the nature herein involved affected tenure.[4] We agree with this factual finding.
We have studied LSA-R.S. 42:691 in the light of the above constitutional mandates and find that it is in conflict with Art. XIV, Sec. 15.1(30)a, La.Const. of 1921, as amended. Both the constitutional provision and the statute are clear and free from ambiguity. The retirement contemplated herein is a definite removal or separation from the classified service for a cause not set forth in Art. XIV, Sec. 15.1(30); no bad behavior is involved; no good behavior is involved. Age, not physical disability, is the prevailing factor for retirement. Such a factor is contrary to tenure during good behavior. The constitutional provision must prevail.
We do not doubt that there may be difficulties encountered by those administering the pension system as a result of this decision. We appreciate the problems of the system, but the office of judges is jus dicere not jus dare, to interpet law, not make law or give law. Madere v. Long, 231 La. 498, 91 So.2d 771; Brown v. Travelers Insurance Company, 247 La. 7, 169 So.2d 540. The instant matter is one that addresses itself to constitutional amendment.
For the reasons assigned, the judgment of the Ninth Judicial District Court, sitting en banc as a three judge court, is affirmed. All costs to be paid by defendants and intervenors.
DIXON, J., concurs.
SANDERS, J., dissents.
TATE, Justice.
The writer respectfully dissents.
The majority construes a civil service enactment as providing lifetime tenure for firemen and policemen in municipalities of from 13,000 to 250,000, and it therefore invalidates legislation (La.R.S. 42:691) which provides for mandatory retirement at age 65 of all governmental employees.[1] In so *596 doing, the majority has failed to consider the legislative purpose of the entire civil service enactment; it has interpreted an isolated phrase in it unreasonably and contrary to any possible intention, taking into consideration the statutory history and context and laws in pari materia.
Before discussing the pertinent Louisiana legislation in detail, it may be well to consider the general purpose of civil service enactments prohibiting removal of classified employees "during good behaviour" and except for cause. In rejecting contentions quite similar to those here made by the appellee firemen, the Supreme Court of Colorado stated the uniform authority as follows, Coopersmith v. City and County of Denver, 156 Colo. 469, 399 P.2d 943, 948 (1967):
"The purpose of civil service legislation is to protect employees from arbitrary and capricious political action and to insure employment during good behaviour. Such protection applies during authorized service. Civil service tenure, however, is not meant to guarantee duration of employment for any number of years or over any particular period of time."[2]
The writer hopes to show, by analysis of pertinent Louisiana legislation, that the majority fell into error by ignoring the legislative purpose motivating enactment of civil service protection for employees, and by failing to take into account the general statutory scheme in Louisiana, by which retirement and retirement-ages are regulated by enactments separate and distinct from the civil service legislation regulating the employment.
In the present instance, the majority finds that firemen and policemen of municipalities of 13,000 to 250,000 have tenures until they die and that they cannot be removed so long as they breathe (live), except by disciplinary proceedings. Thus, if the majority is correct, old and honored employees, too old any longer to perform their arduous and dangerous duties, may nevertheless not be terminated in employment, except after the ordeal and disgrace of a disciplinary hearing finding cause, such as physical infirmity.
The majority reaches this conclusion because of an isolated phrase within a provision relating solely to disciplinary proceedings and removals for cause. The phrase in question ("during good behaviour") is found within Section 30 of Article XIV, 15.1 of our State Constitution. Article XIV, 15.1 is entitled "Fire and police civil service; municipalities of 13,000 to 250,000". Section 30 thereof is entitled "Corrective and Disciplinary Action for Maintaining Standards of Service."
Within this Section 30 (which concerns solely disciplinary proceedings and removals for cause) is contained Sub-section (a), including the italicized phrase upon which the majority relies in conferring lifetime tenures upon these employees. Sub-section (a) provides: "The tenure of persons who have been regularly and permanently inducted into positions of classified service shall be during good behaviour. However *597 the appointing authority may remove any employee * * * for any one of the following reasons: * * * [Then 15 causes for disciplinary action are listed.]" (Italics ours.)
Thus, the purpose of the sub-section in question is simply to provide for disciplinary removal for cause during employment of fire and police civil service employees. However, the majority finds that the introductory provision (that their tenure "shall be during good behaviour") is a positive enactment that their employment is for lifea "tenure" found nowhere else in Louisiana pertaining to any other type of state or local govermental employment in this state.
I should here note there is a complete absence of explanation for any legislative reason or legislative intention to confer this bizarre status alone upon policemen and firemen in municipalities of the population notedno other policemen and firemen in the state are afforded such a unique lifetime employment, not subject to mandatory retirement, and neither are any other governmental employees or officers of this state. I venture to say that this sort of lifetime appointment, continuing despite superannuation, is virtually unknown in American history since Andrew Jackson chased out the decrepit Federalist employees in 1828.
As I shall attempt to show, within the entire statutory scheme, the legislative intent of the cited provision was only to provide for removal for cause during tenure (employment) before retirement. The provision was never intended to regulate legislative provisions for retirement and pension systems, including systems which provide for retirement at a mandatory age, as 65, such as that which we here invalidate as unconstitutional, La.R.S. 42:691.
Article 15.1, providing for constitutional protection for fire and police civil service in municipalities of population noted, was added by amendment to our state constitution in 1952. The enactment is an almost verbatim incorporation into the state constitution, by amendment, of the formerly statutory "Municipal Fire and Police Civil Service Law", which is found in our Revised Statutes of 1950 as La.R.S. 33:2471 to 33:2508.[3] These statutory sections, in turn, represented the redaction into the 1950 Revised Statutes of the fire and police civil service enactment, Act 102 of 1944 (with a few intervening legislative amendments to it, not here material). The purpose of this Municipal Fire and Police Civil Service Law was simply to provide civil service regulation covering the "classification of positions, the appointment, promotion, transfer, demotion, reinstatement, layoff, removal, re-employment, and discipline" of the fire and police employees in question. Section 1, Act 102 of 1944. It was never intended to regulate their retirement or provisions relating to or requiring such retirement for age.
In the context of contemporaneous law, the Municipal Fire and Police Civil Service Law, La.R.S. 33:2471-33:2508 (constitutionalized as Art. XIV, Section 15.1) regulated only the above-described incidents of employment of municipal firemen and policemen, i. e., classification, demotion, removal for cause, etc. Other statutory provisions regulated the retirement and pensions of policemen and firemen. For instance, La.R.S. 33:2021-33:2043 (1950) provided for pensions and benefits to firemen in municipalities of under 25,000, including retirement pensions after only 25 years of service, La.R.S. 33:2036, subd. G. Again, La.R.S. 33:2221-33:2242 provided for pensions and relief of policemen in municipalities between 10,000 and 250,000, including retirement pensions after only 25 years of service. La.R.S. 33:2234 (1950). Other statutory provisions permitted establishment of pension and retirement systems for other municipal employees. See La.R.S. 33:1762 (1950), 33:1781 (as added in 1954), and 33:2425 (1950).
*598 Correlatively, the general statutory scheme regulating firemen and policemen of New Orleans (the only municipality then over 250,000) was the same. Civil service protection during employment, including their removal for cause, was (as of 1952) regulated by a constitutional enactment. Article XIV, Section 15. On the other hand, their pension and retirement rights were regulated by separate enactments. La.R.S. 33:2101-33:2120 (1950) regulated the retirement of New Orleans firemen, including provisions to encourage retirement after only 20 years, La.R.S. 33:2117. La.R.S. 33:2281-33:2304 provided for retirement of New Orleans policemen, including provisions to encourage retirement after twenty years of service, La.R.S. 33:2294.
The same statutory scheme is manifested for employees of the state government. Civil service protection is afforded for them by one enactment (as of 1952, La. Const. Article XIV, Section 15). However, their retirement system is regulated by a separate and different enactment, La. R.S. 42:541-42:672, which even in 1952 provided for mandatory retirement at age 65, La.R.S. 42:585.[4]
This general (i. e., non-firemen and police) civil service provision, Article XIV, Section 15 provides that no person having permanent civil service status "shall be demoted, dismissed, or discriminated against, except for cause * * *." Section (N) (1). An interpretation of this isolated provision out of contextan interpretation identical, in fact, to that given by the present majority to the corresponding provision of the municipal fire and police civil service lawwill require this court to hold that the legislature intended life tenure for all civil service employees of the state and cities. This, we know, the legislature positively did not intend by such language for even then there was the mandatory retirement at age 65 of state employees subject to civil service, La.R.S. 42:585 (1950) (see at footnote 4 above).
Thus, by the statutory scheme, civil service enactments were intended to regulate classified employment and disciplinary actions for cause during such employment. They were never intended to regulate the conditions of retirement, including a mandatory age limit.
Instead, retirement was regulated by other and different enactments. The regulation of retirement and retirement ages was simply not regarded by the legislature as within the scope of a civil service enactment.
At the time the Municipal Fire and Police Civil Service Law, formerly statutory, was, verbatim, constitutionalized in 1952, the concept of a statutory mandatory retirement age was a recognized aspect of retirement legislation. See, for example, from 1950 Revised Statutes: 17:634, 17:852 (school teachers); 17:912 (state school employees); 17:1122 (Orleans school employees); 42:585 (state civil service employees). See also La.R.S. 33:2117 (as amended by Act 212 of 1954) (New Orleans firemen) and 33:2295 (as amended by Act 213 of 1954) (New Orleans policemen), providing mandatory retirement ages for New Orleans firemen and policemen. See also, e. g., Act 222 of 1938, establishing a firemen's pension fund for Shreveport firemen, especially Section 12 (g), establishing a mandatory retirement age of 60 for Shreveport firemen.
In its statutory context, La.R.S. 33:2500 (1950) simply provided for disciplinary and corrective proceedings concerning firemen and policemen; it did not contemplate lifetime tenure. By the phrase that such employees had civil service tenure "during good behaviour", the statute simply meant they could not be removed *599 during their civil service tenure except for cause. The phrase did not contemplate that the legislature could never amend the separate and distinct retirement legislation so as to provide for a mandatory retirement age. Such sort of regulation was within the scope of this latter retirement legislation; it was not intended to be covered by or to be within the scope of the civil service protection legislation.
I can see no reason whatsoever, and no reason whatsoever is ascribed, why this provision should change in meaning when it becomes incorporated into the constitution as Section 30, Article XIV, 15.1 (1952). The provision had the same meaning after, as before, constitutionalization a meaning which never included nor includes any legislative intention that civil service status conferred lifetime tenure upon these firemen and policemen in these particular municipalities, alone in all our state not subject to reasonable legislation providing for a mandatory retirement age.
In summary, when we construe the Municipal Fire and Police Civil Service Law as a whole, and in the context of statutory regulations in pari materia, the legislative intent of the Section 30 was simply to regulate disciplinary grounds for removal, etc., during the pre-retirement tenure of employment. The regulation of retirement, including mandatory ages therefor, is completely outside the scope of legislative intent expressed by the section, for retirement regulations were within the scope of separate and distinct enactments.
Moreover, within the general scheme of police and fire employment regulation, the thrust of the retirement provisions is to afford substantial benefits after only twenty or twenty-five years' service, in order to attract younger men and to encourage them to retire early. The apparent legislative reason is this: The often-hazardous and the arduous duties of these valued public servants, civilization's front-line troops in the protection of the public, can, of course, best be performed by younger men, with the police and fire forces constantly replenished by new young recruits.
It is thus inconceivable that the legislature, attempting to encourage recruitment of younger men into the police and fire forces, and their retirement after twenty years' service, would at the same time freeze into lifetime appointments (alone of all public employees and officials of Louisiana) such employees (and in only certain municipalities), thus subject to retirement for superannuation only by distasteful disciplinary proceedings.
In my opinion, the majority therefore erred in giving the isolated phrase ("during good behaviour") a literal application, without regard to its legislative purpose and the phrase's context in the entire scheme of statutory regulation. See Civil Code Articles 17, 18; State v. Seals, 255 La. 1005, 233 So.2d 914 (1970); State v. Roberson, 225 La. 74, 72 So.2d 265 (1954). Each portion of a constitutional provision is to be interpreted in the light of the whole, to give effect to the true legislative intent. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (1949). A literal interpretation of a portion should be disregarded in favor of the intent of the legislative purpose of the entire provision. State ex rel. Fernandez v. Feucht, 182 La. 134, 161 So. 179 (1935).
In determining the meaning of an enactment, the object is to ascertain the true legislative intent; where a literal construction produces a strained or absurd result, the letter of the law must give way to its spirit and the legislative result reasonably intended. Gremillion v. Louisiana Public Service Commission, 186 La. 295, 172 So. 163 (1937). The courts should construe an enactment to give effect to the true legislative intent; broad and comprehensive language not reasonably intended to apply to a particular situation must be restricted "within narrower limits than its words import, if the Court is satisfied that their literal meaning would extend to cases which the legislature never intended to *600 include." State ex rel. Thompson v. Department of City Civil Service, 214 La. 683, 38 So.2d 385, 388 (1949).[5]
Applying these principles of statutory interpretation, the most reasonable construction of Section 30 is that, within its scope and the scope of the entire Article (which was not intended to regulate retirement), classified employees shall not be disciplined[6] except for cause, i. e., "during good behaviour" means literally that they shall not be dismissed or disciplined so long as they behave themselves and maintain an appropriate standard of conduct.
Other jurisdictions, when faced with similar contentions that subsequent mandatory retirement legislation can curtail civil service tenure, have almost uniformly held that civil service status was not intended to confer lifetime employment upon the employee; that it was only protection for faithful and obedient public service and against dismissal during normal tenure, except as based upon misconduct or incompetence. Coopersmith v. City and County of Denver, 156 Colo. 469, 399 P.2d 943 (1965); Jordan v. Metropolitan Sanitary District, 15 Ill.2d 369, 155 N.E.2d 297 (1959); Boyle v. City of Philadelphia, 338 Pa. 129, 12 A.2d 43 (1940). See also: Beynon v. City of Scranton, 212 Pa.Super. 526, 243 A.2d 190 (1968). Contra: Reed v. City of Youngstown, 173 Ohio St. 265, 181 N.E.2d 700 (1962).
Closely analagous to the present situation is that decided by the Boyle case, cited above. City firemen and policemen were protected by state civil service legislation, which provided they could not be removed or discharged except for cause. Subsequently, a city ordinance was enacted requiring mandatory retirement at 65 (at age 60 in certain categories) of this city's firemen and policemen. In holding valid the municipal regulation of retirement (where retirement was not within the scope of the state civil service legislation), the Supreme Court of Pennsylvania pointed out, 12 A.2d 45:
"Demotion or removal based upon a general, nondiscriminatory age limitation does not contravene * * * [the governing state civil service legislation], wherein it is provided that policemen and firemen shall not be removed or discharged, except for cause, upon written charges, and after a public hearing. The purpose of all civil service legislation is to insure service during good behaviour, and to protect employees against improper personal attack. The protection holds during service, but does not guarantee duration of service over any particular period time * * *."[7]
*601 In conclusion, I strongly believe my esteemed brothers of the majority have fallen into error by so applying an isolated phrase in a civil service provision solely regulating disciplinary proceedings. In my respectful opinion, the majority has construed the provision unreasonably and contrary to any legislative intent to confer upon this particular category of employees a lifetime tenure, although firemen and policemen of other cities and although no other governmental employees of our state have such tenure, previously unknown to our state and local governments of Louisiana.
For these reasons, perhaps too fully stated, I respectfully dissent.
BARHAM, J., concurs.

On Rehearing
TATE, Justice.
The facts are fully stated in our original opinion. In essence, three firemen over 65 years of age sue to enjoin their employer, The City of Alexandria, and its officers from applying to them a state statute requiring their retirement at age 65.
The state statute (La.R.S. 42:691[1]) provides a mandatory retirement for all employees of the state and political subdivisions thereof. In our original opinion, which we now recall, we affirmed a holding that this statute was unconstitutional insofar as affecting firemen in municipalities of 13,000 to 250,000 in population. We held such firemen, uniquely among governmental employees of this state, enjoyed tenure until death and, until then, were removable only for cause.
We reached this conclusion because of a provision in the constitutional enactment which provides civil service tenure to firemen of the municipalities in the noted population range. Article XIV, Section 15.1, La. Constitution (as added in 1952). The provision, found in a subsection entitled "Corrective and Disciplinary Action for Maintaining Standards of Service", Section 15.1(30), states: "The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behaviour." (Italics ours.)
On rehearing, we conclude we were in error in construing this isolated phrase ("during good behaviour") as conferring lifetime tenure. In the context of the provision in which found and of the firemen's civil service enactment as a whole, the phrase simply means that the firemen shall not be removed except for cause during their civil service tenure. For reasons to be more fully stated below, we find that the constitutional enactment providing civil service protection for firemen of the municipalities in question was not intended to and did not within its scope encompass the regulation of retirement, mandatory or otherwise. Instead, retirement was intended to be, and was, regulated by other statutory provisions.
At the outset, we are met with the contention that the provision that the civil service tenure of firemen (in the municipalities in question) "shall be during good behaviour" unambiguously provides lifetime tenure. The petitioners then recite *602 with confidence Article 13 of our Civil Code: "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."
This principle would of course apply if the constitutional enactment disclosed an unambiguous legislative intent that firemen of municipalities 13,000 to 250,000 in population enjoy lifetime tenure. However, the ambiguity of a statute may arise not only from not easily understood wording.
As we stated recently in Matlack, Inc. v. Louisiana Public Service Commission, 260 La. 359, 256 So.2d 118, 121 (1971): "`Ambiguity of statutes may arise otherwise than from fault of expression. An ambiguity justifying the interpretation of a statute, is not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined.'"
We there further noted, 256 So.2d 121:
"In Gremillion v. Louisiana Public Service Commission, 186 La. 295, 172 So. 163, we observed: `In the construction of statutes, absurd results should be avoided, and when the literal construction would produce such a result, the letter of the law must give way to its spirit and the statute should be construed so as to produce a reasonable result.' See, also, In re Hibernia Bank & Trust Co., 185 La. 448, 169 So. 464; State ex rel. Womack v. Jones, 201 La. 637, 10 So.2d 213; Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237, and the authorities therein cited."[2]
In its context, we do not believe the term "tenure ... during good behaviour" unambiguously provides for guaranteed lifetime employment, as our original opinion held. Section 30, in which this phrase is found, regulated only (per its title) "Corrective and Disciplinary Action for Maintaining Standards of Service". In context, the phrase simply means that during civil service tenure, the employee shall not be removed by disciplinary proceedings except for cause, and the causes for disciplinary removal are then expressly set forth. Neither Section 30 or the fire and police civil service law as a whole provides that such civil service tenure shall be for lifeat the least, this meaning requires construction by the courts, rather than being an unambiguous meaning of the phrase. In fact, other provisions of this fire and police civil service law note that positions may be abolished by the appointing authority (Section 28) and that employees may be laid off if a reduction of personnel becomes necessary (Section 29); provisions inconsistent with the guaranteed lifetime tenure implied by our previous construction of the phrase.
Further, to construe the "good behaviour" phrase as conferring lifetime appointments upon the firemen and policemen of municipalities of 13,000 to 250,000 produces absurd and unreasonable results. These firemen and policemen alone are conferred this unique guaranteed lifetime employment, like federal judges, removable only for cause no matter how old. Firemen and policemen of larger or smaller municipalities are subject to mandatory retirement, as are all other governmental employees of our state. Elected public officials have *603 fixed terms; no office of our state government enjoys lifetime appointment. No reason whatsoever is advanced by which the legislature might have intended to confer upon these employees, and these employees alone, such a tenure, so unique and previously unknown to our system and philosophy of state government.
Such a consequence was never intended by our legislature. This will be seen by an examination of the statutory history, as well as by further analysis of the statutory context in which this isolated phrase ("during good behaviour") is found in Sub-Section 30 ("Corrective and Disciplinary Action for Maintaining Standards of Service") of Section 15.1 ("Fire and Police Civil Service; municipalities of 13,000 to 250,000") of Article XIV of our state constitution.
Article 15.1, providing for constitutional protection for fire and police civil service in municipalities of population noted, was added by amendment of our state constitution in 1952. See Act 302 of 1952. The enactment is an almost verbatim incorporation into the state constitution, by amendment, of the formerly statutory "Municipal Fire and Police Civil Service Law", which is found in our Revised Statutes of 1950 as La.R.S. 33:2471 to 2508.[3] These statutory sections, in turn, represented the redaction into the 1950 Revised Statutes of the fire and police civil service enactment, Act 102 of 1944 (with a few intervening legislative amendments to it, not here material).
The legislative purpose of such Municipal Fire and Police Civil Service Law was simply to provide civil service regulation covering the "[1] classification of positions, [2] the appointment, [3] promotion, [4] transfer, [5] demotion, [6] reinstatement, [7] lay-off, [8] removal, [9] reemployment, and [10] discipline" of the fire and police employees in question. Section 1, Act 102 of 1944. It was never intended to regulate their retirement or provisions relating to or requiring such retirement for age.
In the context of contemporaneous law, the Municipal Fire and Police Civil Service Law, La.R.S. 33:2471-2508 (constitutionalized as Art. XIV, Section 15.1) regulated only the above-described incidents of employment of municipal firemen and policemen, i. e., classification, demotion, removal for cause, etc. Other statutory provisions regulated the retirement and pensions of policemen and firemen. For instance, La. R.S. 33:2021-43 (1950) provided for pensions and benefits to firemen in municipalities of under 25,000, including retirement pensions after only 25 years of service, La. R.S. 33:2036, subd. G. Again, La.R.S. 33:2221-42 provided for pensions and relief of policemen in municipalities between 10,000 and 250,000, including retirement pensions after only 25 years of service. La.R.S. 33:2234 (1950). Other statutory provisions permitted establishment of pension and retirement systems for other municipal employees. See La.R.S. 33:1762 (1950), 33:1781 (as added in 1954), and 33:2425 (1950).
Correlatively, the general statutory scheme regulating firemen and policemen of New Orleans (the only municipality then over 250,000) was the same. Civil service protection during employment, including their removal for cause, was (as of 1952) regulated by constitutional enactment. Article XIV, Section 15. On the other hand, their pension and retirement rights were regulated by separate enactments. La.R.S. 33:2101-20 (1950) regulated the retirement of New Orleans firemen, including provisions to encourage retirement after only 20 years, La.R.S. 33:2117. La.R.S. 33:2281-2304 provided for retirement of New Orleans policemen, including provisions to encourage retirement after twenty years of service, La.R.S. 33:2294.
The same statutory scheme is manifested for employees of the state government. Civil Service protection is afforded for *604 them by one enactment (as of 1952, La. Const. Article XIV, Section 15). However, their retirement system is regulated by a separate and different enactment, La. R.S. 42:541-672, which even in 1952 provided for mandatory retirement at age 65, La.R.S. 42:585.[4]
Thus, by the statutory scheme, civil service enactments were intended to regulate classified employment and disciplinary actions for cause during such employment. They were never intended to regulate the conditions of retirement, including any mandatory age limit.
Instead, retirement was regulated by other and different enactments. The regulation of retirement and retirement ages was simply not regarded by the legislature as within the scope of a civil service enactment.
At the time the Municipal Fire and Police Civil Service Law, formerly statutory, was, verbatim, constitutionalized in 1952, the concept of a statutory mandatory retirement age was a recognized aspect of retirement legislation. See, for example, from 1950 Revised Statutes: 17:634, 852 (school teachers); 17:912 (state school employees); 17:1122 (Orleans school employees); 42:585 (state civil service employees). See also La.R.S. 33:2117 (as amended by Act 212 of 1954) (New Orleans firemen) and 33:2295 (as amended by Act 213 of 1954) (New Orleans policemen), providing mandatory retirement ages for New Orleans firemen and policemen. See also, e. g., Act 222 of 1938, establishing a firemen's pension fund for Shreveport firemen, especially Section 12 (g), establishing a mandatory retirement age of 60 for Shreveport firemen.
In its statutory context, La.R.S. 33:2500 (1950) (now Sub-Section 30 of Art. XIV, Section 15.1) simply provided for disciplinary and corrective proceedings concerning firemen and policemen; it did not contemplate lifetime tenure.
La.R.S. 33:2500 (which concerns solely disciplinary proceedings and removals for cause) contained Sub-Section A (now Section 15.1(30) (a) of Article XIV), which provides (identical to the present text): "The tenure of persons who have been regularly and permanently inducted into positions of classified service shall be during good behaviour. However, the appointing authority may remove any employee... for any one of the following reasons: * * * [Then 15 causes for disciplinary action are listed.]" (Italics ours.) Thus, as earlier noted, the purpose of the sub-section in question is simply to provide for disciplinary removal for cause during employment of fire and police civil service employees. The phrase "during good behaviour" did not contemplate lifetime tenure, nor that the legislature could never amend the separate and distinct retirement legislation so as to provide for a mandatory retirement age.
Among the causes for disciplinary removal, incidentally, was "the development of any defect of physical condition which precludes the employee from properly performing the duties of his position." La. R.S. 33:2500 (13) (now Section 15.1(30) (a) (13) Article XIV). While permitting the disciplinary removal for cause of a physically unable employee, the legislators were careful to point out that preserved to the employee was any right he had to voluntarily retire for disability rather than be removed by disciplinary proceeding for cause, thus possibly losing pension rights.[5] Therefore, within this same statutory (constitutional) section providing tenure during good behaviour and removal for certain *605 specified causes, the drafters (redactors) of the provision specifically recognized that laws other than the civil service law regulated retirement.
No reason whatsoever is ascribed why La.R.S. 33:2500, never intended to regulate retirement nor provide lifetime tenure, should change in meaning when it became incorporated into the constitution verbatim as Section 30, Article XIV, 15.1 (1952). The provision had the same meaning after, as before, constitutionalizationa meaning which never included nor includes any legislative intention that civil service status conferred lifetime tenure upon these firemen and policemen in these particular municipalities, thus alone of all governmental employees of our state not subject to reasonable legislation providing for a mandatory retirement age.
The courts should construe an enactment to give effect to the true legislative intent. Broad and comprehensive language not reasonably intended to apply to a particular situation must be restricted "within narrower limits than its words import, if the Court is satisfied that their literal meaning would extend to cases which the legislature never intended to include." State ex rel. Thompson v. Department of City Civil Service, 214 La. 683, 38 So.2d 385, 388 (1949).[6]
See also: Civil Code Articles 17, 18; State v. Seals, 255 La. 1005, 233 So.2d 914 (1970); State v. Roberson, 225 La. 74, 72 So.2d 265 (1954); State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (1949); State ex rel. Fernandez v. Feucht, 182 La. 134, 161 So. 179 (1935).
In summary, when we construe the Municipal Fire and Police Civil Service Law as a whole, and in the context of statutory regulations in pari materia, the legislative intent of the Section 30 was simply to regulate disciplinary grounds for removal, etc., during the preretirement tenure of employment. The regulation of retirement, including mandatory ages therefor, is completely outside the scope of legislative intent expressed by the section, for retirement regulations were within the scope of separate and distinct enactments.
Applying the cited principles of statutory interpretation, the most reasonable construction of Section 30 is that, within its scope and the scope of the entire Article (which was not intended to regulate retirement), classified employees shall not be disciplined[7] except for cause, i. e., "during good behaviour" means literally that they shall not be dismissed or disciplined so long as they behave themselves and maintain an appropriate standard of conduct. Within the entire statutory scheme, the legislative intent of the cited provision was only to provide for removal for cause during tenure (employment) before retirement. The provision was never intended to regulate legislative provisions for retirement and pension systems, including systems which provide for retirement at a mandatory age, as 65.
Other jurisdictions have been faced with similar contentions that subsequent mandatory retirement legislation unconstitutionally or illegally curtailed civil service tenure. They have almost uniformly held that civil service status was not intended to confer lifetime employment upon the employee; that it was only protection for faithful and obedient public service and against dismissal during normal tenure, except as based upon misconduct or incompetence; and that civil service tenure protection was not violated by a general nondiscriminatory and reasonable age limitation *606 subsequently enacted, despite governing provisions that the tenured employee could be removed only for cause. Coopersmith v. City and County of Denver, 156 Colo. 469, 399 P.2d 943 (1965); Jordan v. Metropolitan Sanitary District, 15 Ill.2d 369, 155 N.E.2d 297 (1959); Boyle v. City of Philadelphia, 338 Pa. 129, 12 A.2d 43 (1940). See also: Beynon v. City of Scranton, 212 Pa.Super. 526, 243 A.2d 190 (1968). Contra: Reed v. City of Youngstown, 173 Ohio St. 265, 181 N.E.2d 700 (1962).
Thus, in rejecting contentions quite similar to those here made by the appellee firemen, the Supreme Court of Colorado stated the uniform authority as follows, Coopersmith v. City and County of Denver, 156 Colo. 469, 399 P.2d 943, 948 (1967):
"The purpose of civil service legislation is to protect employees from arbitrary and capricious political action and to insure employment during good behaviour. Such protection applies during authorized service. Civil service tenure, however, is not meant to guarantee duration of employment for any number of set years or over any particular period of time."[8]
For the foregoing reasons, therefore, we reverse the holding of the trial court that La.R.S. 42:691 is unconstitutional, and we dismiss the demands of the petitioners that the defendant city and city officials be enjoined from enforcing it insofar as they are concerned. In accordance with the prayer of the defendants' answer, we decree that the provisions of this enactment, La.R.S. 42:691 are applicable to the Alexandria Fire Department. The costs of these proceedings are to be paid by the plaintiffs-appellees.
Reversed and dismissed.
HAMLIN, J., dissents adhering to the views expressed with original opinion, and concurring in the dissent of DIXON, J.

ON REHEARING
DIXON, Justice (dissenting).
I respectfully dissent.
The issue before us is whether the legislature may require the mandatory retirement of a fire chief and other firemen over the age of sixty-five. The case involves a conflict between a statute and the Constitution. We now hold that the statute controls.
The firemen have sought declaratory judgment to obtain a ruling that R.S. 42:691 conflicts with the tenure provisions of Article 14, Section 15.1 of the Louisiana Constitution.
R.S. 42:691 provides that any public employee who is a member of a retirement system "shall be separated from the public service" upon attaining the age of sixty-five years.
The firemen contend that their tenure is covered by the constitutional provision. The city opposes, contending that R.S. 42:691 is applicable; the local union of the firemen and the retirement fund intervene on the side of the city.
The district judges in Alexandria held that the provisions of the Constitution conflicted with those of the statute, and that the Constitution prevails. We affirmed, but granted a rehearing.
The plain words of the constitutional provision, relied on by the plaintiffs, are that they shall "have tenure during good behavior. However, the appointing authority may remove any employee ... *607 for any one of the following reasons..." Unsatisfactory performance of duty and the development of any defect or physical condition precluding satisfactory performance are listed as reasons for removal.
Our opinion on rehearing finds the statute controlling in spite of the constitutional provision that firemen "have tenure during good behavior."
The attorney for the City of Alexandria stated in argument that the statute was not ambiguous. Our new opinion merely states that "we do not believe the term `tenure... during good behavior'" is unambiguousthat ambiguity can arise, in some manner, from circumstances. Absurd results are referred to, but not specified.

I
If there is no conflict between the provisions of Article 14, Section 15.1 and R.S. 42:691, then there is no basis for plaintiffs' suit.
There is a simple and uncomplicated method to determine whether the constitutional provision and the statutory provision conflictthat is, to apply the problem of the plaintiffs to the constitutional provision alone and then to the statutory provision alone, and determine whether the results are the same or different.
The answer is obvious. Under R.S. 42:691, the plaintiffs would be "separated from the public service."
Under Article 14, Section 15.1, Subsection 30, the plaintiffs would have tenure during good behavior, satisfactory performance, or until the development of any physical condition which would preclude satisfactory performance.
The plaintiffs reach diametrically opposite answers to their problems, depending on whether the constitutional provision, or whether the statutory provision, controls.
To say that there is no conflict between these provisions cannot be true. "Tenure" and "removal," terms used in the Constitution, are certainly broad enough to include the term "separated from the public service," which is the provision in the compulsory retirement act of 1958.

II
It has been argued that to interpret the constitutional provision as it is written would lead to absurd results. Only two ways absurd results might be reached have been suggested. One is that a literal interpretation of the constitutional provision would result in old men staying in the fire department, when firefighting is a young man's job. This specious argument completely overlooks the method adopted by Section 15.1 for removing employees who cannot perform because of age. One methodthe arbitrary selection of an age and making retirement compulsoryis that adopted by R.S. 42:691. The other method providing for removal for disability and for inability to performis the method adopted by Section 15.1. (Note: there is no "lifetime tenure" granted by the constitutional provision. It is tenure for good behavior and during satisfactory performance).

III
It is argued that a literal interpretation of the constitutional provision would lead to "absurd results" because of the actuarial difficulties, and the possible danger to the solvency of the retirement fund.
This argument lacks validity. Here are plaintiffs who could have retired many years ago, and who could have been drawing for many years two-thirds of their pay. Instead of drawing retirement benefits from the retirement fund, these plaintiffs have contributed for many years to the principal of the fund by deductions from their pay.
The Alexandria Fireman's Pension and Relief Fund is not an actuarially funded retirement system. The sources of the Alexandria Fireman's Pension and Relief Fund *608 are, according to Act 12 of 1940, proceeds from sale of condemned property, 2% of salary of firemen and an annual appropriation by the city.

IV
An effort is made in the new opinion to apply a sort of "contemporaneous construction" in order to show that the Constitution really doesn't mean what it says, and that R.S. 42:691 governs.
The doctrine of contemporaneous construction is never applicable unless the statute to be construed is doubtful or ambiguous in its meaning. If a statute is repugnant to a constitutional provision, courts will not validate that statute by invoking a contemporaneous legislative construction rule. Stillman v. Lynch, 56 Utah 540, 192 P. 272.
The Louisiana Supreme Court has held that, where the meaning of a constitutional provision is clear, a contemporaneous or legislative construction of that provision is entitled to no weight. State ex rel. Curtis v. Ross, 144 La. 898, 81 So. 386 (Provosty). See also Jefferson Lake Sulphur Company v. State, 213 La. 1, 34 So.2d 331 (Janvier, ad hoc).

V
Our new opinion states that other jurisdictions have "almost uniformly" held that civil service was not intended to confer lifetime employment on the employee, and that civil service tenure was not violated by mandatory retirement provisions.
We must note that "lifetime employment," "lifetime tenure" and "guaranteed lifetime employment" are not found in the Constitution, and do not fairly characterize the constitutional provisions. Firemen have tenure during good behavior, but may be removed for inefficient performance, from whatever cause. Federal judges "shall hold their offices during good behavior," (Article III, Section 1, U.S. Const.), but can only be removed by impeachment for high crimes and misdemeanors. Federal judges have lifetime tenure. Firemen do not.
Just what does the jurisprudence in other jurisdictions have to say about the conflict between compulsory retirement and tenure during good behavior and efficient service?
The only cases found which have dealt with the problem before us compel the conclusion that our constitutional term "tenure" includes and covers compulsory retirement for age.
Coopersmith v. City of Denver, 156 Colo. 469, 399 P.2d 943, specifically holds that "tenure" in the Colorado constitution includes mandatory retirement for age. (The constitution gave regulation of "tenure" to home rule cities. A Denver charter amendment providing for compulsory retirement for age was held to be within the constitutional grant to cities to regulate tenure).
In Reed v. City of Youngstown, 173 Ohio St. 265, 181 N.E.2d 700 (Taft, J.), the City of Youngstown incorporated a civil service statute in its charter providing that employees' "tenure ... shall be during good behavior and efficient service." The city passed an ordinance requiring retirement at age sixty-five. The Supreme Court of Ohio held that the ordinance conflicted with the city charter and was therefore invalid.
In Leavers v. City of Canton, 1 Ohio St.2d 33, 203 N.E.2d 354, the court held that a city ordinance requiring retirement at age sixty-five was invalid because it conflicted with a state statute providing that: "The tenure ... shall be during good behavior and efficient service ..."
The other cases cited in our new opinion do not touch the problem before us. Jordan v. Metropolitan Sanitary District, 15 Ill.2d 369, 155 N.E.2d 297, upheld a statute fixing mandatory retirement at sixty-seven, whose constitutionality was attacked on the grounds that: (1) the act was broader than its title; (2) it was a revival of a law by *609 inference; and (3) it was an unconstitutional delegation of legislative authority.
Beynon v. City of Scranton, 212 Pa.Super. 526, 243 A.2d 190, merely held that the statute granting a public safety director the power to remove certain employees did not give him the power to fix mandatory retirement ages, a power which reposed in the city which had the obligation of funding the retirement system.
Boyle v. City of Philadelphia, 338 Pa. 129, 12 A.2d 43, could only be applicable to a Louisiana case under Louisiana Constitution Article 14, Section 15, not 15.1. A statute provided that police and firemen could not be removed except for cause. A city ordinance providing for mandatory retirement at age sixty-five was upheld as a reasonable regulation, not prohibited by the statute. Our conclusion in Louisiana would be the same if this case were governed by Article 14, Section 15.
The only applicable jurisprudence found is contra our new opinion!

VI
Our new opinion characterizes the tenure of firemen in Section 15.1 as "unique and previously unknown to our system and philosophy of state government."
This conclusion is inaccurate and ignores the statutory history which the opinion undertakes to examine.
In 1952 there were no provisions in any statute requiring the mandatory retirement of firemen at any age, except for Shreveport firemen. In 1954, Act 212 made it mandatory that firemen retire at age seventy in New Orleans. That was permissible under Constitution Article 14, Section 15. Prior thereto, Act 304 of 1948 governed. It did not provide for mandatory retirement, but rather encouraged retirement after twenty years of service with the fire department.
In cities of population of under 25,000, Act 303 of 1940, now R.S. 33:2021 et seq., governed. That act does not provide for mandatory retirement. It was not until Act 282 of 1964, now R.S. 33:2531 et seq., that small towns were covered, and that act contains the same tenure provisions as Article 14, Section 15.1.
In cities of population of between 13,000 and 250,000, Constitution Article 14, Section 15.1 governs. Its source is Act 102 of 1944, which did not provide for mandatory retirement of firemen. That act was preceded by Act 58 of 1942 and Act 253 of 1940, neither of which provided for mandatory retirement of firemen.
Retirement of firemen in the City of Alexandria was originally governed by Act 176 of 1932, which provided for the retirement of Alexandria firemen for disability, or, "by a majority vote of the members," the retirement of any fireman who had not less than twenty-five years of service. The act was amended by Act 228 of 1934. Both Act 176 of 1932 and Act 228 of 1934, were repealed by Act 12 of 1940. That act eliminated the provisions calling for mandatory retirement of Alexandria firemen. Act 12 of 1940 was amended by Act 57 of 1942 which also did not provide for the mandatory retirement of Alexandria firemen. Act 25 of 1944, Act 4 of 1946, Act 47 of 1952 and Act 58 of 1956 subsequently amended Act 57 of 1942. None provided for mandatory retirement. Only Act 54 of 1958 made it mandatory that all employees of the state or political subdivision thereof retire at age sixty-five. The repealing clause of the act stated that it repealed any other law or parts thereof in conflict therewith. Thus, not until 1958 was it mandatory by statute that Alexandria firemen retire at age sixty-five. See R.S. 42:691.
From 1940 until 1958, the only statutory provision for retirement of Alexandria firemen was for voluntary retirement or retirement for disability.
Such tenure was the rule in Louisiana in 1952 (when Section 15.1 was ratified). It was common in the United States (as shown in opinions from other jurisdictions).
*610 It was certainly not "unknown to our system" in Louisiana.

VII
In 1952, Louisiana already had in its Constitution provisions for a statewide civil service system, applicable also to the City of New Orleans. This is the system under which civil service operates in Louisiana today, with certain exceptions. It was amended in 1952, and rewritten "to provide in detail for state civil service and for city civil service." 1952 was the same year that Section 15.1 was added.
Why didn't the legislature place firemen and policemen under the state civil service act? Section 15 is designed to include firemen and policemen. Subsection (V) and Subsection (W) of Section 15 exclude firemen and policemen, but provide for a method of bringing them under the operation of Section 15 by popular election.
The answer is that firemen and policemen had their civil service act placed in a seprate section of the Constitution because there are obvious differences between the state civil service system and the firemen civil service system. One of those differences is tenure.
Under the state civil service system, there is a different mechanical organization of the provisions governing tenure of employees.
Under Article 14, Section 15(N) (1), a permanent employee could not be "demoted, dismissed, or discriminated against, except for cause, expressed in writing by the appointing authority."
Then, limitations were set on "cause." Cause could not be religious or political opinions or affiliations. There then followed a prohibition against political activity and fraudulent conduct.
In addition, civil service commissions were given the power to "adopt, amend, repeal and enforce rules which shall have the effect of law, regulating employment, transfers, promotion, removal, qualifications, and other personnel matters and transactions and employment conditions ..., and carrying out generally in the foregoing respects, and as may be otherwise necessary to that end, the provisions and purposes of Civil Service as herein provided." Further, Article 14, Section 15(P) (5) provided: "Any valid rule, regulation, or order of a State or a City Civil Service Commission shall be enforceable in the courts of this State by mandamus or injunction..." Subsection (6) of the same section provided: "All existing laws ... are continued in force insofar as not in conflict herewith, subject to the power of the Legislature to ... adopt new laws, provided said amendments or new laws are supplementary and not in conflict herewith."
It is readily seen that the provisions for tenure in the fire and police act are completely different from the scheme set up in the state civil service system. There is no conflict between a mandatory retirement law for state civil service employees. Mandatory retirement for age, on the other hand, was almost unknown in the fire and police systems in Louisiana in 1952.
What was the legislative intent in maintaining two constitutional civil service systems in the same year?
"The revelation of the legislative intent must be above all sought in the textual formula ... As human language itself, the word of the statute is merely an instrument designed to manifest the thought of the speaker ... Since the statute is a product of conscious and reflective thought of its author, not only must he have visualized exactly the rule he intended to establish, but it must be also assumed that he has chosen, with reflection and premeditation, the words words which faithfully express his thought and will." Gény, Method of Interpretation and Sources of Private Positive Law, Sec. 101 (La.L.Institute Trans. 1963).
*611 The clear legislative intent, when Article 14, Section 15.1 was placed in the Constitution in the same year Article 14, Section 15 was completely rewritten, was that there were to be two different civil service systems, and that firemen should have job tenure exactly as describedduring good behavior and efficient performance.
Our original decree should be reinstated.
SUMMERS, Justice (dissenting).
I join with DIXON, J., in reasons he has assigned for dissent.
NOTES
[1] Identical letters were addressed to the plaintiffs; the letter addressed to Chief Pearly J. Bonnette recites:
 "Chief Pearly J. Bonnette
 3020 Darby Street
 Alexandria, Louisiana 71301

"Dear Chief Bonnette:
"This is to advise that I have been requested by the Firemen's Pension and Relief Fund to enforce the provisions of Revised Statutes 42:691 requiring mandatory retirement after reaching the age of 65.
"Inasmuch as you have declined to voluntarily retire, this is notice to you that you are hereby retired as of April 30, 1971.
"The City of Alexandria appreciates the many years of service which you have given. I am aware that you probably feel this law does not apply to firemen, but after careful reading, I am of the opinion along with the Firemen's Pension and Relief Fund that it does. In any event, if you desire to test the issue in the courts please be advised that I wish you every success.
 "With kindest regards,
 [Sgd] C. Edward Karst
 "C. EDWARD KARST,
 "Mayor"

[2] Plaintiffs' petition alleged that Pearly J. Bonnette was Chief of the Alexandria Fire Department and was 67 years of age; that Lionel C. Bergeron was the First Assistant Chief of the Alexandria Fire Department and was 73 years of age; that Sam Domico, Jr. was Chief, Bureau of Fire Prevention of the Alexandria Fire Department and was 67 years of age; and that John Fertitto was Fire Alarm Superintendent of the Alexandria Fire Department and was 68 years of age.
[3] It is to be noted that Sec. 1 of Art. III of the Constitution of the United States provides: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." The "Good Behaviour" provision has been consistently interpreted to mean that a federal judge holds his appointment for life or for as long as he acts in conformity with judicial requisites of "Good Behaviour."
[4] The ruling of the trial court recites, in part: "The discussion here with this Court was whether retirement for less than full pay affects tenure, this is the factual matter with which we have to deal in determining the issue now before the Court. This Court was informed that the statutory provisions for retirement is that firemen will receive 60% of their full pay when they are retired. Which means that these four men, if they are retired, will experience a 40% loss of salary. It is the opinion of this Court that retirement of this nature does affect tenure and that it affects tenure in a manner not contemplated by any of the sub-paragraphs of Article 14:15.1, paragraph 30 and that since it does affect tenure, that is that forced retirement affects tenure, and it is not provided for in the Constitution, then that the statute providing for compulsory retirement is in conflict with the Constitution and therefore is an unconstitutional statute as applied to employees of municipalities of this category.

"For these reasons the preliminary injunction in the form and nature of the temporary restraining order is granted."
[1] La.R.S. 42:691 (Act 54 of 1958) provides for mandatory retirement at age 65 of all employees of the state or its subdivisions who are covered by any retirement system or by federal social security. However, the enactment permits the year-to-year retention of employees over 65, when the appointing authority certifies their continuance in employment "would be advantageous to the public service by reason of * * * expert knowledge and qualifications." The majority holds this act unconstitutional insofar as firemen and policemen (employed by municipalities 13,000 to 250,000) because of its conflict with the alleged life tenure provision (Section 30) of the Municipal Fire and Police Civil Service Law (Art. XIV, Section 15.1, La. Constitution).
[2] Pertinently as to the present issue, the court also stated, 399 P.2d 948: "As to rights protected by civil service, it has been held that mandatory retirement provisions do not contravene a civil service requirement that firemen can only be removed for cause and then only after following the requisite procedure of giving notice and holding a hearing."
[3] The constitutional Section 30, for instance, is found verbatim as La.R.S. 33:2500.
[4] The provision also provides for continuance on a year by year basis after 65, upon written application of employee and his employer, if such continued employment would be "advantageous to the state service by reason of * * * expert knowledge and qualifications."
[5] The latter case concerns the judicial exclusion from coverage by a civil service enactment of a municipal officer (an appointed judge of Recorder's Court). Such officer was within the literal terms of the enactment, but was not reasonably intended to be included (the court held), in light of statutory history, context, and general principles of governmental civil service regulation.
[6] Section 30 is entitled "Corrective and Disciplinary Action for Maintaining Standards of Service."
[7] The court also observed, in finding a reasonable legislative basis for mandatory retirement for policemen and firemen, 12 A.2d 44: "* * * Experience has demonstated that generally one who has attained the age of sixty or sixty-five years does not possess the physical vitality or energy of a younger man. Some maximum age limitation is particularly desirable, in fact necessary, for hoseman, ladderman, and patrolman, because the duties of these positions demand a greater degree of physical vigor and alertness than that exacted of superior officers. Such employees are frequently required to perform work which is strenuous and dangerous. They must possess physical fitness and a mental attitude that will cause them to disregard safety in the public service. While there are some individual exceptions, it is undoubted that the man of sixty is not as physically able to perform exhausting duties as is a younger man. Certainly, it is also true that he has developed a mental attitude of caution to danger that would be disregarded by one more youthful. Acts of strength, endurance, and bravery are not usually performed by men of three score years. They are generally physically incapable of such action."
[1] La.R.S. 42:691 (Act 54 of 1958) provides for mandatory retirement at age 65 of all employees of the state or its subdivisions who are covered by any retirement system or by federal social security. However, the enactment permits the year-to-year retention of employees over 65, when the appointing authority certifies their continuance in employment "would be advantageous to the public service by reason of ... expert knowledge and qualifications."
[2] Likewise, this court long ago rejected similar arguments that Article 13 requires our courts to apply the literal wording of a statute, no matter how obvious it is that the legislation's intent and purpose was not to apply to the particular type-issue before the court. In holding to the contrary and that the true legislative intent should instead be sought, in the light of the entire legislative regulation of the question, Justice Martin for the court noted that the judges could not ignore the letter under the "pretext" of pursuing its spirit, but that "the letter may be disregarded with the honest intention of seeking its spirit. When, therefore, the letter of the law leads to an absurd conclusion, the judge is bound to recede from it, until he arrives at a reasonable conclusion." Ardry's Wife v. Ardry, 16 La. 264, 268 (1840).
[3] The constitutional Section 30, for instance, is found verbatim as La.R.S. 33:2500.
[4] The provision also provides for continuance on a year by year basis after 65, upon written application of employee and his employer, if such continued employment would be "advantageous to the state service by reason of ... expert knowledge and qualifications."
[5] La.R.S. 33:2500(b) (1950), now Section 15.1(30) (b), Article XIV: "* * * Nothing contained herein shall prevent any employee who is physically unable to perform the duties of his position from exercising his rights of voluntary retirement under any applicable law."
[6] The latter case concerns the judicial exclusion from coverage of a civil service enactment of a municipal officer (an appointed judge of Recorder's Court). Such officer was within the literal terms of the enactment, but was not reasonably intended to be included (the court held), in light of statutory history, context, and general principles of governmental civil service regulation.
[7] To repeat, Section 30 is entitled "Corrective and Disciplinary Action for Maintaining Standards of Service."
[8] Pertinently as to the present issue, the court also stated, 399 P.2d 948: "As to rights protected by civil service, it has been held that mandatory retirement provisions do not contravene a civil service requirement that firemen can only be removed for cause and then only after following the requisite procedure of giving notice and holding a hearing."