No. 14,014.

COOK ET AL. *v.* CITY OF DELTA ET AL.
(64 P. [2d] 1257)

Decided January 11, 1937.  Rehearing denied February 1, 1937.

Mr. Charles E. Blaine, Messrs. Moynihan, Hughes & Knous, Messrs. Fairlamb & Fairlamb, for plaintiffs in error.

Mr. Milton R. Welch, Mr. Clyde C. Dawson, Jr., Messrs. Pershing, Nye, Bosworth & Dick, for defendants in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

The parties to this litigation appear here as in the district court and reference will be made to them as plaintiffs and defendants.

The city of Delta operates under a charter adopted pursuant to article XX of the state Constitution and is known as a home rule city. Its electric and power demands are now supplied by a privately owned public utility the franchise of which expired in 1928. Section 100 of the city charter as adopted in 1912 provided that the city might acquire a municipal light and power plant only after submission of the question of such acquisition to a vote of the taxpaying electors of the city and if a majority of such voters was in favor thereof. At the election in November, 1935, an amended section 100 was submitted to the general electorate of the city, a majority of whom voted in its favor. The section as amended is as follows: "Sec. 100. Municipal Electric Light and Power System. The City Council shall have the right,

and without order or further preliminaries, it shall be the duty of the City Council forthwith to acquire, by any lawful means, a municipal electric light and power system, consisting of a generating plant and distribution system with all necessary appurtenances, and to issue in full payment therefor municipal electric light and power, interest bearing, revenue bonds, which bonds shall be payable solely out of the earnings and revenues to be derived from the operation of said system and secured by a pledge of such earnings and revenues, such revenue bonds in no event to be paid by taxation or out of the general funds of the city, except that the city shall pay reasonable rates for all light and power service actually rendered to the City of Delta, or its agencies, as such services accrue, should the city elect to avail itself of such services. The City Council shall have power to maintain and operate said system for the use and benefit of said city and its inhabitants and shall have all other powers and shall adopt all means necessary or appropriate to carry out the requirements, purpose and intent of this section in accordance with the most liberal construction which may be placed thereon. Any and all parts of the City Charter and all laws in conflict herewith are hereby repealed.

"Paragraph 2. The foregoing amendment shall be voted upon by the qualified electors of the City of Delta in accordance with the provisions of Article XX of the Constitution of the State of Colorado and the Charter of said city.

"Dated at Delta, Colorado, October 3, 1935."

Plaintiffs brought this action as taxpaying electors of the city for themselves and all others similarly situated seeking to have the amendment declared null and void; to enjoin the secretary of state from filing it; to enjoin the city and the three city commissioners from taking any action pursuant thereto, and particularly from issuing any revenue bonds unless the matter of such issuance should first be submitted to and approved by a majority

vote of the taxpaying electors of the city. To reverse an adverse judgment of the district court the plaintiffs prosecute this writ of error.

Except as to certain issues raised by assignment of cross-errors, which will hereafter be noticed, the numerous assignments of error in effect present but four questions: (a) Have the plaintiffs the capacity to prosecute the action? (b) Did the people of Delta have the power to write the provisions of section 100, as amended, into their charter? (c) If they had such power did they comply with the procedural requirements for doing so? (d) Was it necessary to submit to the taxpaying electorate of the municipality, a home rule city, the question of issuing revenue bonds payable out of the earnings of a light and power plant thereafter to be constructed?

If questions (b) and (c) are answered in the affirmative and (d) in the negative, we need not determine the capacity of plaintiffs to bring the action. Inasmuch as we hold that these questions must be so answered, we express no opinion as to the capacity of the parties as taxpaying electors to sue, but expressly reserve that matter for determination if and when necessary, in a cause properly before us.

The state possesses all powers, not expressly or impliedly delegated to the federal government or which it is prohibited from exercising by the federal Constitution. Upon the exercise of its residual powers it has by its Constitution placed certain restrictions: Some in the nature of absolute prohibitions; some prescribing certain methods by which its powers must be exercised; some by way of a grant of powers to subordinate governmental agencies which are in effect a restriction on its own exercise of such of its residual powers as it thus grants. Since the state has all the power it has not delegated or the exercise of which it has not restricted, its subordinate governmental agencies are vested only with powers expressly or impliedly granted by the Constitution or statutes and they can exercise no other.

■ Article XX of the state Constitution is an express grant of certain powers to cities availing themselves of its provisions, and of all such incidental powers as are necessary to confirm to such cities the "full right of self government in both local and municipal matters." Section 6, article XX, state Const. Section 1, expressly grants to home rule cities the right to "construct, condemn and purchase, purchase, acquire, lease, add to, maintain, conduct, and operate  *  *  *  light plants, power plants  *  *  *  and everything required therefor for the use of said city  *  *  *  and the residents thereof." Since the avowed intention of the article is to give to the city the full right of self government in both local and municipal matters the power granted with respect to light plants must be a grant of power concerning either local or municipal matters or both. In *Holyoke v. Smith*, 75 Colo. 286, 226 Pac. 158, we said: "The operation of the electric light plant by the town of Holyoke is the performance of a municipal function, specifically authorized by statute. Section 8987, C. L. 1921." In that case we used also the following language: "It should not be overlooked that a lighting system is owned and operated by a municipality, in a proprietary, and not in a governmental capacity. As such it is not subject to legislative control." In *People ex rel. v. Loveland*, 76 Colo. 188, 230 Pac. 399, the decision in *Holyoke v. Smith, supra,* was approved.

Since the constitutional amendment expressly delegates the power to acquire light plants and power plants, it remains next to be determined whether the city followed the proper method in exercising such power.

■ Plaintiffs say the charter prescribes a method which was not followed. Under article XX, supra, the general electorate of the town is authorized to create its charter. The original charter of the city of Delta gave to a limited portion of the general electors; namely, the taxpaying electors, the right to pass upon the question of acquiring a municipal power and light plant,

which right they held merely by sufferance of the general electorate that could at any time take away what it had given, provided it followed the procedure prescribed by law. We have observed that section 1 of article XX provides that the municipal corporation shall have the power to acquire a light and power plant. There is no constitutional grant to the taxpaying electors of the right to determine whether a light or power plant shall be acquired or constructed. This court expressly so held in *Newton v. Fort Collins,* 78 Colo. 380, 241 Pac. 1114.

■ Chapter 192, Session Laws of 1927, recognizes the power of home rule cities to provide by charter the methods for acquiring or constructing light and power plants. That chapter lays down the plan to be followed even by home rule cities "unless otherwise provided by the charter of such city or town." A recognition of the fact that they may so provide is an acknowledgment that they possess the power to do so.

■■ It is claimed that since by section 8 of the charter the city adopted certain state laws relating to elections, that all of the proceedings outlined by statute for submitting an initiated measure must be followed in submitting a charter amendment. These provisions are found in section 1, article V, of the Constitution, which is made self executing and in sections 26 to 42, C. L. 1921. Section 8 of the Delta charter is as follows: "General Election Regulations. The provisions of any state law now or hereafter in force, relating to the qualifications and registration of electors, the manner of voting, the duties of election officers, the canvassing of returns, and all other particulars in respect to the management of elections, except as otherwise provided in this Article, so far as they may be applicable, shall govern all municipal elections; provided, also, that the council shall meet as a canvassing board and duly canvass the election returns within two days after any municipal election. Whenever any member of the council is a candidate for re-election, the council shall appoint some justice of the

peace of said city to take the place of said candidate upon said canvassing board as a member thereof.'' We think section 8 must be read in connection with section 155 of the charter which is as follows: ''Submission of Charter Amendments. This charter may be amended at any time in the manner provided by Article XX of the Constitution of the State of Colorado. Nothing herein contained shall be construed as preventing the submission to the people of more than one charter amendment or measure at any one election.''

The latter provision is specific as related to the passage of a particular measure, namely, a charter amendment. We think it falls within the exception in section 8, supra, which provides for the adoption of state laws ''except as otherwise provided in this article.''

Does article XX of the Constitution, which by its terms is self executing, set forth a method for the amendment of charters of home rule cities? The trial court so found. We think that finding correct. Section 5 of the article, in so far as here material is as follows: ''The clerk of the city and county shall publish, with his official certification, for three times, a week apart, in the official newspaper, the first publication to be with his call for the election, general or special, the full text of any charter, charter amendment, measure, or proposal for a charter convention, or alternative article or proposition, which is to be submitted to the voters. Within ten days following the vote the said clerk shall publish once in said newspaper the full text of any charter, charter amendment, measure, or proposal for a charter convention, or alternative article or proposition, which shall have been approved by a majority of those voting thereon, and he shall file with the secretary of state two copies thereof (with the vote for and against) officially certified by him, and the same shall go into effect from the date of such filing. He shall also certify to the secretary of state, with the vote for and against, two copies of every defeated alternative article or proposition, charter, charter amend-

ment, measure or proposal for a charter convention. Each charter shall also provide for a reference upon proper petition therefor, of measures passed by the council to a vote of the qualified electors, and for the initiative by the qualified electors of such ordinances as they may by petition request.'' The procedure outlined is definite and complete. The charter by section 155 adopts it. The record discloses a compliance with it. Section 100, as amended, therefore, became a valid part of the city charter and all parts of the charter inconsistent with it were repealed by its terms and hence became of no further force or effect.

The clear mandate of this amended section is that the city council shall acquire a light plant by any lawful means. The charter as thus amended does not require legislative action that the electorate is powerless to enforce. By section 5 of article XX, supra, the charter of home rule cities is required to contain a provision ''for the initiation by the qualified electors of such ordinances as they may by petition request.'' Counsel for plaintiff concedes that the charter contained such a provision as to ordinances so that if the council did not see fit to obey the mandate of section 100 of the charter, as amended, the electorate could itself under the initiative powers reserved to it act in the only way the council could act; namely, by passing an ordinance to make the charter provision effective.

We are asked to determine that a charter amendment is a measure within the purview of the general initiative and referendum—constitutional and statutory provisions of the state. The specific requirements of article XX are that a charter amendment shall be proposed only by petition of the electors and that it must be passed by a majority vote of the electorate before it becomes effective. It is in its very nature an initiated measure. The general initiative and referendum provisions are designed to give the electorate the right, by acting directly on measures, to control the acts of its representative

16

legislative bodies, not to control its own direct acts. To contend otherwise is to assert an absurdity. The people do not need the protection of the referendum as to their own initiated measures, neither do they require the protection of the initiative as to measures that they by constitutional provision are permitted to pass only by direct vote. It is sufficient that in such cases they follow, as the trial judge held in this case, and as we hold, they did, the method outlined by the Constitution for securing their judgment on the proposed measure. We hold that the general constitutional and statutory provisions do not apply.

Counsel for plaintiff cite the case of *People ex rel. v. Stapleton,* 79 Colo. 629, 247 Pac. 1062, as authority decisive of one of the questions which they contend is involved in this case; namely, whether a charter amendment may contain more than one proposition. In that case, by charter amendments, offices were created and officials designated to fill them. Counsel here contend that section 100, as amended, submitted to the voters the question of the municipal acquisition of a light and power plant and also involved a vote on a bond issue to finance such acquisition. The amendment is not susceptible of such a construction. It contains no specification of the amount of bonds to be issued, the interest they shall bear or the dates of their maturity. These matters are involved inherently in any authorization of a bond issue and without their specification there is no authorization. They enter into the very constitution of the bonds themselves. These matters are left by the amendment to be determined by an ordinance passed by the city council which necessarily would be subject to referendum as to these matters, or by an ordinance directly initiated by the people. In making their contention counsel have fallen into a fallacy similar to that stated in the Stapleton case, supra, in which it was said: "The fallacy of the theory lies in its failure to distinguish between legislation and election, between form of government and official per-

sonnel. Under the American system, deeply rooted in state and federal Constitutions, laws are enacted, officials are elected or appointed. * * * Official personnel and form of government being separate and distinct, voters are entitled to an opportunity to accept the one and reject the other.''

Both the power to acquire a light and power plant and to finance the same by revenue bonds are, as we have pointed out, conferred upon charter cities by article XX of the Constitution. If the amendment may be said to contain two propositions, both are related to fundamental policies of government with respect to a specific public utility. We know of no restriction, constitutional or otherwise, to prevent a city providing by charter that its public policy shall be such as results from the concurrent application of two related propositions either or both of which it has the power to adopt and apply. The manner of payment is so clearly related to the manner of acquisition as to necessitate its consideration as an incident to, or a means of, making the mandate to acquire, effective.

Was it necessary to submit the question of the issuing of revenue bonds to a vote of the taxpaying electors? The constitutional grant of right to the taxpaying electors of charter cities is to vote upon and thus determine the right of the city to issue bonds in payment for the utility sought to be constructed or acquired.

In *Sanborn v. Boulder*, 74 Colo. 358, 221 Pac. 1077, the court had under consideration a provision of the charter of the city of Boulder with reference to the issuing of bonds. In the opinion in that case appears the following: ''Another objection is that the provision in the ordinance for the issuing of bonds without submitting the question to a vote of the qualified electors, is void as in conflict with section 2, clause 'd' of the charter, reading, the city 'shall have the power * * * to construct, purchase, and acquire and operate waterworks, power plants and other public utilities or works or ways, local in use and

extent, and shall have the power to issue bonds upon the vote of the taxpaying electors in any amount necessary to carry out any of its said powers or purposes,' and also contravenes section 97 of the charter reading: 'Except as otherwise in this Charter provided, no bonds shall be issued for any purpose, except in pursuance of an ordinance authorizing the same, * * * and no bonds shall be issued unless the question be submitted to the vote of such qualified electors of the city as shall have paid a property tax therein,' etc.

"First, we observe that the clause of section 2 quoted, is restricted to bonds to pay for specified public utilities, local in use and extent. Manifestly this section was intended to apply only to bonds issued and made payable by the city in its corporate capacity, and were to be paid by the city out of general taxes." The words, "and shall have the power to issue bonds upon the vote of the taxpaying electors," are identically the words used in section 1 of article XX of the State Constitution and were held, as used in the charter, not to refer to revenue bonds but to general obligation bonds only. The court distinguished the case of *Deter v. City of Delta,* 73 Colo. 589, 217 Pac. 67, where the charter provision was "save that no bond issue shall be made without a vote of the qualified electors of the city who are taxpayers under the law, authorizing such issue." On this point the writer of the opinion in *Sanborn v. Boulder,* who wrote the opinion in *Deter v. Delta* also, said: Quite different are the charter provisions of the city of Boulder, which authorize the city council to issue bonds for the payment of the construction in a local improvement district without the vote of the qualified electors." These words are equally applicable now to the charter of the city of Delta containing section 100, as amended, which specifically directs the acquisition or construction of a light and power plant and the issuing of revenue bonds in payment therefor without other or further preliminaries.

## Cross-Errors.

The defendants' assignment of cross-errors relates solely to matters appearing in the supplemental complaint and in the evidence, some of which evidentiary matters were not even mentioned in any pleadings. The supplemental complaint sets forth: "That the city of Delta, Colorado, heretofore to wit on or about the year 1923, with the use of funds derived from taxation of real and personal property within the City of Delta, Colorado, constructed a portion of an electric light system and paid for the same out of tax funds of the City of Delta, Colorado, to wit: the installation of the electric cables underlying both sides of Main Street from Second Street to Seventh Street, inclusive, a total of five blocks of four hundred feet each, together with crossings under four streets, each seventy-five feet in width, and on both sides of Main Street, a total of one mile, more or less, of distribution system, at an expense of not less than $10,000.00, all of which, on and prior to the 31st day of May, 1936, was and has been, since the year 1923, owned by the City of Delta, Colorado. That by said alleged ordinance it is proposed to divert the revenue and income from said distribution system now and heretofore owned by said City of Delta, Colorado, to the payment of said proposed Municipal Five Per Cent Revenue Bonds, and utilize the income from said distribution system now and heretofore owned by said City of Delta, Colorado, away from making returns to the tax funds and away from the benefit of the taxpayers and property owners of said City." We think this contention is disposed of adversely to plaintiffs in the opinion in *Searle v. Haxtun*, 84 Colo. 494, 271 Pac. 629, wherein the court said: "Plaintiff's next proposition is that the proposed bonds take his property without due process of law; that since the bonds already outstanding, the proceeds of which were used to pay for the present plant, constitute a lien upon the property within the town, including plaintiff's property, he has a right to have the income of the plant applied to the liquidation

of its purchase price, and that the proposed bonds will deprive him of that right without due process of law. The answer is that he has no such right. His claim necessitates the premise that the income which a city derives from her own property must be devoted solely to payment of the purchase price thereof and that to use it otherwise deprives her taxpayer of property. We cannot assent to either of these propositions."

The parties have treated as involved in the case the question of whether the city in constructing its municipal plant may use a tract of ground that is of the present value of $825 which it purchased to use as a tourist camp but which it is not now so using; and whether the city may use $8,000 raised by general taxation to carry out the white way lighting project above referred to, but which never was used for such purpose and still remains in the city treasury. Nothing is said about either of these two matters in the complaint, supplemental complaint or in any of the pleadings. We are in utter ignorance of them save that the following appears in the record by way of stipulation: "That the present plans and specifications upon which bids were called for in the publication of June 3, 1936, in the Delta Independent, called for the use of certain underground wiring and cables in Main Street and the use of certain lots in the city of Delta as part and parcel of the electric light plant and distribution system to be constructed and used by the city under its present plans, and the said wiring and cables and lots belong to the city of Delta, and were paid for by general revenue of the city; said cables were installed in 1923 and have never been used and said lots belong to the city and were acquired for a camping ground and have not been used for a number of years, excepting that the house constructed on said lots has been rented to third parties by the city." "That there is now in the City Treasury of the city of Delta, $8,000.00 which was raised by general taxation for the purpose of constructing a White Way on Main Street in the city of Delta." Without the briefs we would be

completely at sea as to the contentions of the respective parties as to their rights under the facts stipulated and even as to whether they made any contention that the facts disclosed that their rights were being or about to be violated. We think the matters of the use of the land and the money mentioned, were not before the trial court and are not before us. Not being an issue under the pleadings, and the evidence not presenting any issue or indicating any clash in contentions as to the rights of the parties it was error for the court to render a finding and judgment thereon.

The judgment of the district court is reversed in so far as it decreed that the city might not use the wires and cables installed for a white way as a part of the proposed municipal light and power plant to be constructed. The judgment is reversed also in so far as it decreed that the city might not use lands that it owned as a location for its municipal light and power plant and in so far as it decreed that the city might not use the $8,000 accumulated for the construction of a white way. In all other respects the judgment is affirmed.

MR. CHIEF JUSTICE CAMPBELL not participating.