No. 21347.

ABE COOPERSMITH, ET AL., *v.*
THE CITY AND COUNTY OF DENVER, ET AL.
(399 P2d 943)

Decided March 15, 1965.

470

DONALDSON, HOFFMAN & GOLDSTEIN, for plaintiffs in error.

Max P. Zall, Earl T. Thrasher, Robert M. Kelly, for defendants in error.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

We will refer to plaintiffs in error as plaintiffs, or individually by name, and will refer to defendants in error, who are the City and County of Denver, various public officials, a commission and others named, as the City.

Plaintiffs in the trial court and by this writ of error, in a class action, have challenged the validity of submitted ordinance No. 137, Series 1962, which was an amendment to the Charter of the City and County of Denver which created a joint department of safety and excise. Stated in its broadest terms, plaintiffs object to the ordinance in question because it requires their retirement from the fire department, under certain conditions, upon attaining the age of 65 years.

The record discloses that the City Council of Denver submitted to the qualified voters of the City and County of Denver a proposed charter amendment, which was voted on and approved at a special municipal election held June 5, 1962. This action, which was tried to the court, was begun July 2, 1962, by plaintiff Coopersmith and others who were active members of the fire department and of the International Association of Fire Fighters Local No. 858. Then Fire Chief Allie A. Feldman, who is not a member of Local No. 858, but who is over 65 years of age and affected by the ordinance, was a witness at the trial. He sought to intervene after adverse judgment below, which request was denied. He was, however, on his showing made here permitted to intervene on this writ of error. The Denver Policemen's Protective Association was, on motion, allowed to intervene before trial. It supported the validity of the amendment.

The wording of the charter amendment which is the principal cause of this controversy states:

"C5. 36-1 Any member of said fire department who is otherwise eligible for retirement shall be retired from said fire department upon reaching his 65th birthday or on July 1, 1964, which ever event occurs later."

Plaintiffs present eight points for our consideration, six of which are urged for reversal of the judgment contending that the charter amendment, as applied to them and those similarly situated, is invalid for the following reasons:

(1) That it allegedly and improperly contains many diverse and "multifarious" subjects;

(2) That is was not submitted to the voters in the proper manner as required by the Colorado Constitution;

(3) That it improperly imposes duties on the State Board of Trustees of the Firemen's Pension Fund;

(4) That repeal and adoption of the amendment, using the so-called 1960 Compilation, failed to accomplish a legal repeal or adoption of the parts thereby affected;

(5) That firemen's retirement is a matter of statewide concern only and the city was without power to legislate on the subject;

(6) That the amendment impairs alleged contractual rights of plaintiffs;

(7) That "Authorities in other states frown upon subsequently effective provisions for involuntary retirement"; and,

(8) That Feldman had a right to intervene *after* judgment below and on this writ of error.

Because of the question raised as to Feldman's right to join in the prosecution of this writ of error, we shall first dispose of that matter.

■ Feldman's motion here has been granted and he is properly before this court. In *Tower v. Tower,* 147 Colo. 480, 364 P.2d 565 (1961), we cited with approval the language in *Miller v. Clark,* 144 Colo. 431, 356 P.2d 965 (1960), which sets forth the requirements necessary

for a person rightfully to prosecute a writ of error to this court as follows: "One of two tests must be met before any party may prosecute a writ of error to this court. He must either be a party to the action or he must be a person substantially aggrieved by the disposition of the case in the lower court."

Feldman was a member of the class represented by the Fire Fighters Union and when the Union decided not to prosecute a writ of error, Feldman as a member of the class and also as a party aggrieved by the disposition of the case in the lower court, had a right, upon making a proper showing that an appeal might not be taken to protect his interests, under the tests stated, to participate in prosecuting this writ of error. We thus need not decide whether the trial court was correct in denying him permission to intervene below, *after* judgment had entered.

We turn next to the other issues before us.

██ First, as to whether the amendment is void because it assertedly covers several subjects. Here the object of the City government and the voters was to create one new department of government. The title of the ordinance so describes it and the body of the act, though containing some sections applicable to all City employees (of which these protestants were a part) relates to those objects expressed in the title. The applicable rule is that if the title of an ordinance adequately describes each subject included in the body, and if the voters can vote for or against the issue presented and can express their intentions in regard to any alternative amendment or proposition submitted, then the form of the legislation is valid. Merely because no alternative or counter amendments or propositions were submitted here does not invalidate this charter amendment as presented to the voters.

██ The question of whether Article XX, Section 5 of the Colorado Constitution prohibits a home rule charter amendment from containing more than one subject

was before this court in *Denver v. Mewborn,* 143 Colo. 407, 354 P.2d 155 (1960). There the City Council of the City and County of Denver passed an ordinance calling for the submission to the voters of an amendment to replace Article III of the Charter. That amendment repealed Article III in its entirety and substituted therefor thirty-seven new sections divided into four titles: a Department of Public Works, a Department of Parks and Recreation, one of Eminent Domain, and one of Local Public Improvements. This court held in *Mewborn* that there was no constitutional provision prohibiting the inclusion of those four subjects in one amendment. The court there concluded in effect that the inhibition against more than one subject in legislative enactments has no application to constitutional or organic law.

Decisions prior to *Mewborn* seemed to avoid the question of whether unrelated subjects could be included in one amendment but did establish the rule that if the subjects submitted were germane to each other or if the subjects were so interconnected and dependent on each other that it would not be desirable to adopt one without the others, it is unnecessary to submit to the voters each subject individually. E.g. *Cook v. City of Delta,* 100 Colo. 7, 64 P.2d 1257 (1937); *Moore v. Perkins,* 56 Colo. 17, 137 Pac. 55 (1913). Also, there is no limitation on the number of subjects that may be included in a constitutional amendment. *People v. Sours,* 31 Colo. 369, 74 Pac. 167 (1903).

 Obviously, if diverse subjects could never be brought together under one title in an ordinance, there could never be any modernization of local governmental functions and the citizens of a home rule city would be burdened with antiquated and perhaps useless departments and employees. To such a view we cannot give our sanction. We believe that the object of the title of an amendment is to notify those concerned with the act as to what is being proposed in the body of the ordinance. That object was accomplished here and this amendment

is therefore not subject to attack for diversity of subjects.

As to the second ground urged for reversal, we also find it to be without merit. This attack is based on the fact that the amendment was initiated by the City Council and not by a petition of the qualified electors. Plaintiffs maintain that the 1950 amendment to Section 5 of Article XX of the Colorado Constitution, giving the City Council authority to initiate a proposed charter amendment, had no effect on that part of Section 5 which states: "No charter, charter amendment or measure adopted or defeated under the provisions of this amendment shall be amended, repealed or revived except by petition and electoral vote."

If plaintiffs' construction is the correct one, the amendment of 1950 granted nothing to a home rule city council. Applicable rules of construction do not permit us to hold that such an amendment is a nullity. Actually what happened is that the quoted and relied on wording above was amended by implication by a later constitutional amendment granting the City Council the same power as held by the electorate to initiate such changes.

As to the third ground for reversal, i.e. plaintiffs' contend that the amendment imposes the duty of retiring Denver firemen who have reached their 65th birthday upon the State Board of Trustees of the Firemen's Pension Fund, this, too, is without merit.

It is true that a municipal governmental unit may not direct a state board or agency to act. This is not, however, the situation in this case. Local mandatory retirement and state pension benefits are not to be equated. The fact that a person is involuntarily retired by the City does not affect the Board of Trustees of the State Pension Fund. That Board, presently by statute, has control over procedures governing those persons who voluntarily apply for retirement benefits; it also determines whether a person is entitled to pension benefits as a result of becoming mentally or physically disabled while on active duty. No state statute, however, sets any

standard which this charter amendment interferes with or attempts to overrule in regard to involuntary retirement at age 65, nor could it, because this subject relates solely to *tenure,* power over which is expressly delegated to home rule cities by Article XX, Section 6 of the Colorado Constitution.

We turn next to the question as to whether it was improper to use the 1960 Compilation of Denver City Ordinances as referral numbering in submitting the questioned amendment to the voters?

 The term "Compilation" is defined in 82 C.J.S. *Statutes,* § 271 as follows:

"A compilation is merely an arrangement and classification of the legislation of a state in the exact form in which it was enacted, with no change in language; it is merely a bringing together in a convenient form of the various acts of legislation enacted over a period of time; it does not purport to restate the law or to be a substitute for prior laws; it does not require any legislative action in order to have the effect it is intended to have; it is not the law but merely evidence of the law."

Plaintiffs urge that the 1960 Compilation, in and of itself without readoption and reenactment to approve the numbering system, is illegal and of no effect. They do not contend that it is misleading or that the language of the charter, charter amendments or of the ordinances themselves was changed. This court, in a prior decision, inferentially approved this particular Compilation and we cannot see any reason for now reversing that approval. *Bowman v. Eldher,* 149 Colo. 551, 369 P.2d 977 (1962). We hold, therefore, that the City has the implied power to make periodically a compilation of its city charter, charter amendments and ordinances so that they are in some coherent and logical order.

We turn now to the fifth ground urged by the plaintiffs, viz., whether the mandatory retirement provision is invalid because it allegedly is a question of statewide

concern which has been heretofore pre-empted by state action.

As we have previously mentioned, *tenure* is a subject over which Article XX, Section 6 of the Colorado Constitution, grants the power of regulation to home rule cities. This in and of itself demonstrates that this point is not well taken and is a complete answer to that argument.

As to the sixth point, plaintiffs contend that the charter amendment impairs their alleged contractual rights under their contract of employment.

At the outset, we feel it is necessary to distinguish between pension rights and rights, if any, as to length of employment, and whether the latter is subject to any contract restrictions. The specific rights that plaintiffs claim are being impaired are those of pension benefits and those protected under the civil service act which assertedly thereby created a contractual relationship. We do not agree with either contention. No showing was made in the trial court, and none is made here, indicating that plaintiffs will receive a reduced pension or that they will forfeit or lose any pension rights due to involuntary retirement as applied to them by virtue of the challenged amendment. One of them does complain about loss of salary (the pension being less) and the other asserts he just wants to keep on working because he is fit and able and because he asserts a vested right so to continue until *he* wants to retire or is found physically or mentally unfit to continue his work. What plaintiffs overlook, in this regard, is that there comes a time in the lives of all men when the inexorable burden of time weighs heavily in the balance of their affairs; the millstones of destiny begin to grind finer and finer, and inevitably a surcease from labor and an end to life itself occurs in some fashion. If an employer-employee relationship is viable and means anything in the spectrum of this case, it is that the former shall call the tune and not the latter. To hold that

an employee can work as long as he desires, without an express contract to that effect, would destroy the concept of employer-employee entirely and make the administrated the administrator. To state the proposal is to refute it. We thus find no merit to this issue. Plaintiffs still have the right to receive pension benefits to the same extent they did before the amendment was approved.

As to rights protected by civil service, it has been held that mandatory retirement provisions do not contravene a civil service requirement that firemen can only be removed for cause and then only after following the requisite procedure of giving notice and holding a hearing. In this regard see: *Boyle v. City of Philadelphia*, 338 Pa. 129, 12 A.2d 43 (1940). *Bratton v. Dice*, 93 Colo. 593, 27 P.2d 1028 (1933) cited and relied on by plaintiffs is not controlling in this type of situation. This issue, therefore, has nothing to do with an employment contract or civil service tenure.

The purpose of civil service legislation is to protect employees from arbitrary and capricious political action and to insure employment during good behavior. Such protection applies during authorized service. Civil service tenure, however, is not meant to guarantee duration of employment for any number of set years or over any particular period of time. Clearly, the City and County of Denver has the authority to determine the term or tenure of service of its employees, agents and officers and it follows that it may establish a mandatory retirement age for its firemen without contravening the provision of civil service legislation.

In view of what we have said above, those parts of the ordinance discussed must be held to be valid as to these plaintiffs; and, there is no need to discuss plaintiffs' seventh ground for reversal.

The judgment is affirmed.