Emmett P. FOX, Plaintiff-in-Error,

v.

CITY OF COLUMBIA et al.,
Defendant-in-Error.

Supreme Court of Tennessee.

Feb. 20, 1973.

---

Jerry C. Colley, MacFarland, Colley, Blank & Jack, Columbia, for plaintiff in error.

William B. Cain, Moore, Henry, Henry, Lewis & Cain, Columbia, for defendant in error.

## OPINION

HUMPHREYS, Justice.

The City of Columbia retired Emmett P. Fox, Chief of Police, under a retirement pension plan ordinance, adopted in 1961. Chief Fox, a Civil Service employee, contended that he could not be retired, because of the Civil Service provision in the city charter. In Chief Fox's suit based on this contention, the trial court held for the city. Chief Fox has appealed, assigning this action as error.

Invoking the proposition that the city charter prevails over an ordinance, Barnes v. Ingram, 217 Tenn. 363, 397 S.W.2d 821, 825, Chief Fox relies on § 18 of the city charter, relating to the termination of employment of Civil Service employees, for the proposition that the sole authority to make provision for the termination of Civil Service employees under any circumstances is vested by the charter in the Civil Service Board. § 18 is as follows:

"Sec. 18. Civil Service employees may be dismissed, suspended, reduced in rank, or otherwise punished only by judgment of the Civil Service Board after trial and conviction by said Civil Service Board upon a written charge or charges, a copy of which shall be furnished the accused at least ten days prior to such trial. A copy of any amendment or amendments made to said charge or charges before or during the trial shall be furnished the accused at least five days prior to the time he shall be required to make defense thereto. Said charge or charges, or any amendments thereto, shall plainly and specifically set forth the offense or offenses charged, and shall be recorded by the Civil Service Board in a record kept for that purpose . . . . ."

The City, on its side, refers us to § 6 of its charter which provides:

"Section 6. *Board of Commissioners, powers.* The legislative and all other powers except as otherwise provided by this Charter are hereby delegated to and vested in the Board of Commissioners, and the Board of Commissioners may, by ordinance or resolution, not inconsistent with this Charter, prescribe the manner

in which any powers of the City shall be exercised, provide all means necessary or proper therefor, and to do all things needful within or without the City or State to protect the rights of the City."

Under this authorization the city adopted its pension retirement ordinance No. 570 with these pertinent provisions:

"A. Section 1.07. *Employer:* Shall mean the City of Columbia, Tennessee, and any entity succeeding it which shall assume the obligations of this plan.

"B. Section 1.09. *Normal Retirement Date:* Shall mean the anniversary date nearest a participant's sixty-fifth (65th) birthday. Normal retirement date for participants who are over age fifty-five at date of original entry into the plan, shall be ten years from the date of such entry.

"C. Section 1.11. *Participant*: Shall mean an employee who becomes covered under this plan as provided in Article II.

"D. Article V. Retirement.

Section 5.01. *Participants expected to Retire at Normal Retirement Date:* Each participant shall be expected to retire on his normal retirement date, and may continue on in employment after said date only at the request of the employer and with the consent of the participant."

It was stipulated by the parties that the normal retirement date of Chief Fox under

Ordinance No. 570 was July 1, 1971, and that he was retired on August 5, 1971.

So, the issue is, whether or not the City was authorized to adopt its retirement ordinance, in view of the provision in its charter with respect to Civil Service employees.

 We have concluded, both upon general principles of statutory construction and interpretation, and upon an abundance of authority from other states, that there is no conflict between the Civil Service provisions of the charter and the retirement ordinance.

Section 18, on which Chief Fox relies, relates only to the disciplining of Civil Service employees. Its provision that Civil Service employees may be "dismissed, suspended, reduced in rank, or otherwise punished only by judgment of the Civil Service Board after trial and conviction by said Civil Service Board upon a written charge or charges," leaves no doubt that the charter section was intended to relate exclusively to the subject of the manner in which Civil Service employees might be disciplined, and makes it clear that the section has nothing to do with the subject of the termination of employment because of age.

Not only is there nothing in Sec. 18 that indicates an intention to control by charter the subject of retirement by reason of age, the charter indicates the true, and a contrary, purpose of the Civil Service provisions, in Article 6.[1]

---

1. Article VI, Section 21:
"It is hereby declared to be the intention and purpose of this Act that Civil Service employees of the City of Columbia shall be kept out of politics, so that their positions cannot be endangered, nor these employees be annoyed or disturbed by the political plans and schemes of anyone; and the Civil Service Board is hereby authorized to make and enforce such rules and regulations consistent with the provisions of this Act, as will keep Civil Service employees out of politics, and as will guarantee to all such Civil Service employees the right to cast their votes in all elections, free from any embarrassment or duress of any sort; as it is hereby made the duty of the Mayor of the City of Columbia to see that the rules of the Civil Service Board are enforced for the protection of all Civil Service employees; and if the Mayor shall wilfully neglect any of the duties imposed upon him in this regard, it shall subject him to removal from office upon impeachment and conviction of such charges, by three-fifths vote of the whole number of the members of the Board of Commissioners."

Since the subject of retirement because of age is nowhere mentioned in the Civil Service provisions of the charter, but to the contrary the expressed purposes of the Civil Service provisions are to secure and protect employees from arbitrary and capricious political action, and to insure employment during good behaviour, Coopersmith v. City & County of Denver, 156 Colo. 469, 399 P.2d 943, it follows, upon general principles of statute construction and interpretation, that there is no basis for the application of the rule exemplified by Barnes v. Ingram, supra. So, the question remaining is whether or not under § 6 of the City Charter, Board of Commissioners, Powers, supra, the City of Columbia was authorized to enact an ordinance providing for mandatory retirement of civil service employees at age sixty-five.

While we have no cases in Tennessee that deal with this subject, there are many such cases from other jurisdictions, all of which uphold the right of a municipality to provide for the mandatory retirement of Civil Service employees who have attained an age which would affect the efficiency of the employee. Boyle v. City of Philadelphia, 338 Pa. 129, 12 A.2d 43; Humbeutel et al. v. City of New York et al., Sup., 125 N.Y.S.2d 198; Coopersmith v. City & County of Denver, 156 Colo. 469, 399 P.2d 943; Geary et al. v. Trustees of the Village of Mamaroneck, 53 Misc.2d 337, 278 N.Y. S.2d 506.

In Boyle v. City of Philadelphia, supra, municipal firemen, Civil Service employees under charter provisions providing for removal or discharge only for cause upon written charges and after a public hearing, were retired at age sixty-five under an ordinance adopted subsequent to the Civil Service legislation. In answering their contention that the ordinance was invalid that Court said:

"Of course, in the absence of express statutory prohibition, the power is inherent in a municipality to prescribe reason-

able and non-discriminatory superannuation classifications, similar to those here set up, with respect to its fireman and policemen. Experience has demonstrated that generally one who has attained the age of sixty or sixty-five does not possess the physical vitality or energy of a younger man."

In speaking of such a compulsory retirement policy the Pennsylvania Supreme Court observed:

"That the action taken represents a wise public policy cannot be doubted. There is no discrimination in the classes embraced in the ordinance, and no political, religious or personal motives are behind its enactment.

"We do not agree with appellants that this plan is forbidden by legislative mandate. Demotion or removal based upon a general, non-discriminatory age limitation, does not contravene § 18, Article XIX, of the Act of June 25, 1919, P.L. 581, 53 P.S. Section 3338, wherein it is provided that policemen and firemen shall not be removed or discharged, except for cause, upon written charges, and after a public hearing. The purpose of all civil service legislation is to insure service during good behavior, and to protect employees against improper personal attack. The protection holds during service, but does not guarantee duration of service over any particular period of time."

In Humbeutel v. City of New York, et al., supra, the question was whether or not some 240 members of the police department of the City of New York could be compulsorily retired under a local law upon their attainment of the age of sixty-three years in view of § 22(2) of the New York State Civil Service Law, McKinney's Consol.Laws, c. 7, which provided: "Removals generally. No officer or employee holding a position in the competitive class of the Civil Service of the State or any civil divi-

sion or city thereof, shall be removed except for incompetency or misconduct." Expressing doubt about the wisdom of the local law the Supreme Court of New York nevertheless sustained the right of the City of New York to force the policemen to retire.

Geary, et al. v. The Trustees of The Village of Mamaroneck, supra, is directly in point. We quote from that opinion, the following:

"The thrust of plaintiffs' argument appears to be that Section 4 of the challenged Local Law purports to provide for the *removal* of police officers of the Village in contravention of the Laws or Statutes of New York of general application which prevent such removals except for incompetency or misconduct, that is to say, that Local Law No. 3 in effect 'removes' plaintiffs from their Civil Service positions without a disciplinary hearing or trial, in violation of Section 891, of the Unconsolidated Laws. We are unable to agree with plaintiffs' contention. The language of Section 4 of Local Law No. 3 speaks unequivocally of *termination* of employment at age 62, and not of 'removal' from office. The whole act is concerned with retirement for age of police officers from service, at a certain age determined by the Board of Trustees in the public interest of the Village, and not with their removal for incompetency or misconduct. 'Retirement' does not constitute 'removal' within the meaning of Section 891 of the Unconsolidated Laws . . ."

Geary, et al. v. The Trustees of The Village of Mamaroneck, 53 Misc.2d 337, 278 N.Y.S.2d 506, 509.

To summarize: We conclude that there is no conflict between the city charter provisions relating to Civil Service and the retirement ordinance; that the retirement ordinance is reasonable and valid; and that the City was authorized by the ordinance to retire Chief Emmett P. Fox as he had attained retirement age.

The judgment of the trial court is affirmed.

DYER, C. J., CHATTIN and McCANLESS, JJ., and WILSON, Special Judge, concur.