The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY

May 21, 2020

**2020COA81**

**No. 18CA1637, *Gieck v. Governor's Office of Information Technology* — Colorado Constitution — State Personnel System; Government — Office of Information Technology — State Employee Protection**

In this whistleblower complaint case, a division of the court of appeals interprets, for the first time, legislation creating the Office of Information Technology in the Office of the Governor (GOIT), section 24-37.5-103, C.R.S. 2019, to determine whether GOIT employees hired after the legislation became effective are excepted from the state personnel system under the Civil Service Amendment, Colo. Const. art. XII, section 13.  The division holds that such employees are excepted under the Civil Service Amendment and, therefore, the State Personnel Board has no

jurisdiction to consider a complaint filed by GOIT employees under the Whistleblower Act. The division further holds that the GOIT statute does not violate the Civil Service Amendment. Accordingly, the division affirms the Board's order dismissing the petitioner's complaint for lack of subject matter jurisdiction.

Court of Appeals No. 18CA1637
State Personnel Board Case No. 2017G074

_____

Jeffreyson Robert Gieck,

Petitioner-Appellant,

v.

Office of Information Technology,

Respondent-Appellee,

and

Colorado State Personnel Board,

Appellee.

_____

ORDER AFFIRMED

Division VI
Opinion by JUDGE FREYRE
Grove and Taubman*, JJ., concur

Announced May 21, 2020

_____

The Law Office of William J. O'Donnell, P.C., William J. O'Donnell, Centennial,
Colorado, for Petitioner-Appellant

Philip J. Weiser, Attorney General, Jack D. Patten, III, Senior Assistant
Attorney General, Denver, Colorado, for Respondent-Appellee

Philip J. Weiser, Attorney General, Amy Lopez, Assistant Attorney General,
Denver, Colorado, for Respondent-Appellee


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    In 1918, Colorado's citizens amended the state constitution and created a personnel system for state government. Colo. Const. art. XII, § 13 (Civil Service Amendment). The Civil Service Amendment provided that the state personnel system "shall comprise all appointive public officers and employees of the state," subject to some exceptions. Colo. Const. art. XII, § 13(2)(a). One of those exceptions is employees in the Governor's and Lieutenant Governor's offices "whose functions are confined to such offices and whose duties are concerned only with the administration thereof." Colo. Const. art. XII, § 13(2)(a)(III).

¶ 2    In 2006, the General Assembly created an Office of Information Technology in the Office of the Governor (GOIT), which effectively consolidated all state agencies' information technology departments into a single department. *See* § 24-37.5-103, C.R.S. 2019. Importantly, the legislation permitted state employees who were already part of the state personnel system to retain their status and rights under the Civil Service Amendment when they transferred to GOIT.

¶ 3    The petitioner, Jeffreyson Robert Gieck, is a GOIT employee who was hired in March 2015. He filed a complaint under the

1

Whistleblower Act with the State Personnel Board (Board). As a matter of first impression, we must interpret the interplay between the Civil Service Amendment and the legislation creating GOIT to decide whether the Board has subject matter jurisdiction to consider Mr. Gieck's complaint under section 24-50.5-104, C.R.S. 2019, or whether, by virtue of his employment in GOIT, he is excepted from the Civil Service Amendment and should have filed his complaint in the district court under section 24-50.5-105, C.R.S. 2019. The Board found it had no jurisdiction.

¶ 4 Mr. Gieck challenges the Board's order on two grounds. First, he contends that the administrative law judge (ALJ) erroneously interpreted the statute creating GOIT without properly considering the language that allows only certain GOIT employees to retain rights under the state personnel system. Alternatively, he contends that if the statute creating GOIT allows for certain employees to be exempt from the state personnel system and not others, then the statute violates the Civil Service Amendment.

¶ 5 We conclude that Mr. Gieck is excepted from the Civil Service Amendment as an employee in the Governor's office and that the statute does not violate the Civil Service Amendment. Accordingly,

we affirm the Board's order adopting the findings and conclusions of the ALJ that the Board lacked subject matter jurisdiction to consider Mr. Gieck's complaint and dismissing that complaint.

## I.    Factual and Procedural Background

¶ 6    In March 2015, GOIT hired Mr. Gieck as a Senior Developer. This position supported a project management tool known as "Clarity." GOIT used Clarity to manage information technology projects of all sizes, including projects from different state agencies. GOIT also used Clarity to standardize information technology resources for project management and project plans as examples for other state agencies.

¶ 7    In May 2017, Mr. Gieck filed a "whistleblower complaint" with the Board. He alleged that his supervisor retaliated against him with a negative performance evaluation because he had raised concerns that GOIT was misusing Clarity. GOIT disputed these allegations and filed a motion to dismiss for lack of jurisdiction.

¶ 8    The first ALJ issued an order to Mr. Gieck to show cause why the Board should not dismiss the complaint for lack of jurisdiction. This ALJ preliminarily found (based only on the pleadings and not on any evidence) that, because Mr. Gieck's functions were not

3

"confined to the offices of the governor or the lieutenant governor, and [were] not concerned only with the administration of the offices of the governor or the lieutenant governor," a hearing on the jurisdictional question should be granted. The Board adopted the preliminary recommendation and granted a hearing before a second ALJ.

¶ 9 GOIT then filed a second motion to dismiss for lack of jurisdiction, and Mr. Gieck responded. The ALJ permitted the parties to engage in discovery and scheduled an evidentiary hearing to determine whether Mr. Geick's functions were confined to the office of the Governor and concerned only with the administration thereof, and thus whether the Board had subject matter jurisdiction.

¶ 10 After holding the hearing and accepting the parties' stipulated facts, the ALJ found that, while Mr. Gieck primarily supported GOIT's internal projects and applications, he also worked with other state agencies, including the Departments of Health Care Policy and Financing, Public Health and Environment, and Revenue. The ALJ recognized that Mr. Gieck often interacted with other state agencies in fulfilling his role in GOIT to support Clarity, an application they

used. Nevertheless, the ALJ found that the General Assembly had placed GOIT squarely in the Governor's office, that the General Assembly had enumerated GOIT's responsibilities in section 24-37.5-105, C.R.S. 2019, and that Mr. Gieck's job description fell within those statutory responsibilities. And because Colorado Constitution article XII, section 13(2)(a)(III) excludes employees whose functions are confined to the office of the Governor and whose duties are concerned only with the administration of the office of the Governor, the ALJ reasoned that the functions enumerated in section 24-37.5-105 were, by definition, confined to the office of the Governor and concerned with the administration thereof. Noting that Mr. Gieck had not introduced any evidence that he performed functions outside those listed in section 24-37.5-105, the ALJ concluded that Mr. Gieck had failed to establish subject matter jurisdiction in the Board and dismissed his complaint. Mr. Gieck appealed to the Board, which affirmed the ALJ's decision.

## II. Subject Matter Jurisdiction

¶ 11 Mr. Gieck contends that the Board's order adopting the ALJ's conclusion that the Board lacked subject matter jurisdiction over

his complaint is legally erroneous. More specifically, he argues that even though the statute creating GOIT transferred certain functions originally spread out over various state information and technology departments to the Governor's office, the statutory language expressly provided that GOIT employees still retained rights to the state personnel system. Thus, he argues, all GOIT employees have rights to the state personnel system, not just those who transferred from other state agencies to GOIT. We disagree.

### A.    Standard of Review and Statutory Interpretation

¶ 12    We review an administrative agency's decision for an abuse of discretion, and we may reverse or modify that decision only if we find "that the agency acted arbitrarily or capriciously, made a decision that is unsupported by the record, erroneously interpreted the law, or exceeded its authority." *Colo. Dep't of Human Servs. v. Maggard*, 248 P.3d 708, 712 (Colo. 2011). When resolution of a jurisdictional issue involves a factual dispute, the clearly erroneous standard of review, not the de novo standard, applies to appellate review of factual findings. *Walton v. State*, 968 P.2d 636, 643 (Colo. 1998). But, if the facts are not in dispute, the "issue is one of law, and an appellate court is not bound by the [agency's]

determinations." *Swieckowski v. City of Ft. Collins*, 934 P.2d 1380, 1384 (Colo. 1997).

¶ 13   "[T]he question whether the district court or the board correctly interpreted the applicable [statutes] is a question of law, subject to de novo review." *C Bar H, Inc. v. Bd. of Health ex rel. Jefferson Cty.*, 56 P.3d 1189, 1192 (Colo. App. 2002). Because the facts were undisputed and largely stipulated, Mr. Gieck only challenges the ALJ's legal conclusions on appeal. Thus, we review the ALJ's statutory interpretation de novo.

¶ 14   When interpreting a statute, our primary task is to give effect to the intent of the enacting body. *In re Estate of Moring v. Colo. Dep't of Health Care Policy & Fin.*, 24 P.3d 642, 646 (Colo. App. 2001). To discern this intent, we first examine the plain language of the statute and interpret its terms in accordance with commonly accepted meanings. *Id.* "We construe a statute so as to give effect to every word, and we do not adopt a construction that renders any term superfluous." *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo. 2005). "Where the language is clear, we do not look beyond the plain meaning of the words or resort to other rules of statutory

construction." *Watson v. Pub. Serv. Co.*, 207 P.3d 860, 863 (Colo. App. 2008).

¶ 15    A statute is ambiguous if it is reasonably susceptible of multiple interpretations. *Williams v. Kunau*, 147 P.3d 33, 36 (Colo. 2006). Only when a statute is ambiguous do we look beyond the "express statutory language for other evidence of legislative intent and purpose, such as legislative history or other rules of statutory construction." *Crandall v. City & Cty. of Denver*, 238 P.3d 659, 662 (Colo. 2010). We may also consider the "consequences of a given construction, and the end to be achieved by the statute." *People v. Yascavage*, 101 P.3d 1090, 1093 (Colo. 2004). But we avoid strained, forced, or absurd interpretations. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1191 (Colo. 2010); *In re Estate of Moring*, 24 P.3d at 646.

¶ 16    The Whistleblower Act protects state employees from retaliation from an appointing authority or supervisor when an employee discloses "information on actions of state agencies that are not in the public interest." § 24-50.5-101, C.R.S. 2019; *see also* § 24-50.5-103, C.R.S. 2019. To raise violations of the Whistleblower Act, employees within the state personnel system

8

may file a written complaint with the Board. § 24-50.5-104. Employees not in the state personnel system may only bring a "civil action in the district court" alleging Whistleblower Act violations. § 24-50.5-105. A plaintiff raising such a claim "has the burden to prove subject matter jurisdiction." *Ferrel v. Colo. Dep't of Corr.*, 179 P.3d 178, 183 (Colo. App. 2007).

## B. GOIT Statutory History

¶ 17 We begin with an overview of GOIT's history and its creation. In 1999, the General Assembly formed GOIT's predecessor, the Office of Innovation and Technology, and placed it in the Governor's office. Ch. 224, sec. 1, § 24-37.5-103, 1999 Colo. Sess. Laws 866. The General Assembly also transferred the duties, functions, and personnel of the Commission on Information Management from the Department of Personnel to GOIT's predecessor. Ch. 224, sec. 1, § 24-37.5-104, 1999 Colo. Sess. Laws 866; *see* § 24-37.5-104(1), (2)(a), C.R.S. 2019. As relevant here, that statute provides as follows:

> Any such employees who are classified employees in the state personnel system shall retain all rights to the personnel system and retirement benefits pursuant to the laws of this state, and their services shall be deemed

9

to have been continuous. All transfers and any abolishment of positions in the state personnel system shall be made and processed in accordance with state personnel system laws and regulations.

§ 24-37.5-104(2)(b), C.R.S. 2019.

¶ 18   In 2006, the General Assembly replaced the Office of Innovation and Technology with GOIT — an "office of information technology" — in the "office of the governor." Ch. 346, sec. 3, § 24-37.5-103, 2006 Colo. Sess. Laws 1726. It provided that the office would be headed by "the chief information officer, who shall be appointed by the governor and who shall serve at the pleasure of the governor." § 24-37.5-103. And, similar to the statute creating GOIT's predecessor, the GOIT statute retained civil service protections for existing state employees whose classified positions it transferred to GOIT:

> [A]ll employees of the office of innovation and technology shall be transferred to [GOIT] and shall become employees thereof. Such employees shall retain all rights to the state personnel system and retirement benefits under the laws of this state, and their services shall be deemed to have been continuous. All transfers and any abolishment of positions in the state personnel system shall be made and processed in accordance with state personnel system laws and rules.

10

§ 24-37.5-104(5)(b).

¶ 19    Finally, since GOIT's creation, the General Assembly has transferred additional duties, responsibilities, and personnel from other state agencies to GOIT.  *See* Ch. 284, sec. 2, § 24-37.5-104(6), 2008 Colo. Sess. Laws 1113-14 (transferring functions of the general government computer center and telecommunications coordination from the Department of Personnel to GOIT in 2008); *see also* Ch. 107, sec. 2, § 24-37.5-104(7), 2010 Colo. Sess. Laws 358-60 (transferring functions of the enterprise facility for operational recovery, readiness, response, and transition from the Department of State and participating state agencies to GOIT in 2010).  In doing so, it has employed the same language that "[a]ny such employees who are classified employees in the state personnel system shall retain all rights to the personnel system."  § 24-37.5-104(6)(b)(II), 7(c)(II), C.R.S. 2019.

## C.    Arguments

¶ 20    Mr. Gieck urges us to conclude that his job is part of the state personnel system, based on the consistent language described above allowing classified state employees to retain their status when moving to GOIT.  He asserts that the General Assembly intended all

11

GOIT employees to be part of the state personnel system. He does not dispute the ALJ's factual findings that "the actual functions and responsibilities of Mr. Gieck's employment track the functions and responsibilities which are codified under [section] 24-37.5-105."

¶ 21 GOIT, on the other hand, argues that this language simply "grandfathered" existing state employees into the state personnel system when they moved to GOIT, but did not include new hires or employees who were not already in the classified system when GOIT was established. And, it continues, by enumerating GOIT's specific functions and placing GOIT squarely in the Governor's office, the General Assembly intended to exempt nontransferring employees, like Mr. Gieck, from the state personnel system.

¶ 22 We conclude that the plain language of section 24-37.5-104(2)(b), (5)(b), (6)(b)(II), and (7)(b)(III), and in particular the words "such employees . . . shall retain," evidences the General Assembly's intent to "grandfather" existing classified employees into the state personnel system when their job functions are transferred to GOIT. Therefore, Mr. Gieck, as a nontransferring GOIT employee, is not part of the state personnel system, and the Board lacked subject matter jurisdiction to consider his complaint.

## D. Analysis

¶ 23 We begin our analysis with the Civil Service Amendment, which exempts certain Governor's office employees from the state personnel system and note that it existed long before GOIT was created. That amendment provides in relevant part:

> (2)(a) The state personnel system shall comprise all appointive public officers and employees of the state, except the following . . .
>
> (III) The employees in the offices of the governor and the lieutenant governor whose functions are confined to such offices and whose duties are concerned only with the administration thereof.

Colo. Const. art XII, § 13(2)(a)(III).[1]

¶ 24 The purpose of the state personnel system is "to protect employees from arbitrary and capricious political action and to insure employment during good behavior." *Coopersmith v. City &*

---

[1] The amendment originally exempted, among other employees, "[t]he governor's private secretary and three *confidential employees* of his office." *Colo. Civil Serv. Emps. Ass'n v. Love*, 167 Colo. 436, 442, 448 P.2d 624, 626 (1968) (emphasis added). In 1968, the supreme court in *Love* interpreted "confidential employees" to mean "employees of the Governor whose functions are confined to his office and whose duties are concerned with the administration thereof," which is the language that was adopted in the 1969 amendment to the Civil Service Amendment and included above. *Id.* at 451, 448 P.2d at 630.

13

*Cty. of Denver*, 156 Colo. 469, 479, 399 P.2d 943, 948 (1965). We presume the General Assembly created GOIT knowing that its nontransferring employees would be exempt from the state personnel system. *See Lang v. Colo. Mental Health Inst.*, 44 P.3d 262, 266 (Colo. App. 2001) (presuming that "the General Assembly was aware of the existence of the state personnel system and its constitutional underpinnings").

¶ 25     We next examine the statutory language moving state employees to GOIT to determine whether that language should be applied to all GOIT employees, including nontransferring employees. The relevant language provides:

> [A]ll employees of the office of innovation and technology shall be transferred to [GOIT] and shall become employees thereof. Such employees shall retain all rights to the state personnel system and retirement benefits under the laws of this state, and their services shall be deemed to have been continuous. . . .

§ 24-37.5-104(5)(b).

¶ 26     No one disputes that the first sentence transferred employees of the Office of Innovation and Technology to GOIT or that it solely concerned the employees of the Office of Innovation and Technology. Therefore, the following words "such employees" can

14

only refer to transferring employees of the Office of Innovation and Technology. *See Chandler-McPhail v. Duffey*, 194 P.3d 434, 440 (Colo. App. 2008) (as a canon of statutory construction, referential and qualifying words and phrases refer to the clause immediately preceding them unless there is a contrary intention). Mr. Gieck provides no reasoning or authority to support his assertion that "such employees" refers to *all* employees of GOIT. Because his interpretation is inconsistent with the General Assembly's intent, we reject it.

¶ 27    We next consider the language "shall retain" and conclude that it further shows the General Assembly's intent to grandfather existing classified employees into the state personnel system, knowing that new GOIT employees would be excepted from it under the Civil Service Amendment. In this context, "shall" is mandatory language indicating that the General Assembly intended to protect state employees who were already part of the state personnel system. *See Aren Design, Inc. v. Becerra*, 897 P.2d 902, 904 (Colo. App. 1995) ("The use of the word 'shall' in the statute is presumed to indicate a mandatory requirement." (citing *Colo. State Bd. of Med. Exam'rs v. Saddoris*, 825 P.2d 39, 43 (Colo. 1992))). Moreover, the

word "retain" means "to keep in possession or use."  Merriam-Webster Dictionary, https://perma.cc/K4A6-U95E; *see People v. Zuniga*, 80 P.3d 965, 969 (Colo. App. 2003) (concluding that the "most common dictionary definition of 'retain' is 'to keep in possession or use'" (quoting Webster's Third New Dictionary 1938 (1986))).  Because the statute requires that employees "retain" rights to the state personnel system, it demonstrates that the General Assembly intended the transferring employees (here the employees in the Office of Innovation and Technology) to "keep in possession" the rights that they already had, i.e., their rights under the state personnel system.  Absent any language addressing the status of nontransferring employees like Mr. Gieck, we presume the General Assembly knew and intended that they would be excepted from the state personnel system under the existing Civil Service Amendment.  *See Rook v. Indus. Claim Appeals Office*, 111 P.3d 549, 552 (Colo. App. 2005) ("We may not read into a statute a provision not found in it.").

¶ 28    Accordingly, we affirm the Board's order adopting the ALJ's findings and conclusions that it lacked subject matter jurisdiction to consider Mr. Gieck's complaint.

### III. Constitutionality

¶ 29 Mr. Gieck next contends that construing the GOIT statute to deny state personnel system benefits to him, while maintaining those benefits for employees who transferred to GOIT, violates the Civil Service Amendment. We disagree.

### A. Preservation and Standard of Review

¶ 30 GOIT disputes preservation of the constitutional issue. It contends that we should not address Mr. Gieck's constitutional challenge because he did not raise it before the ALJ, and because he should have sought declaratory relief in the district court. We construe Mr. Gieck's challenge as a facial challenge that we may properly consider for the first time on appeal. *Horrell v. Dep't of Admin.*, 861 P.2d 1194, 1199 (Colo. 1993) (facial challenges need not be raised with the Board, which has no authority to consider them); *Celebrity Custom Builders v. Indus. Claim Appeals Office*, 916 P.2d 539, 541 (Colo. App. 1995) (in cases involving direct review of agency action, the court of appeals has initial jurisdiction to review the constitutionality of a statute), *as modified on denial of reh'g* (Oct. 12, 1995).

¶ 31    Because the application of a constitutional standard is a question of law, we review this issue de novo.  *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 440 (Colo. 2000).  Unless the statute implicates a suspect classification or impacts a fundamental right, we presume a statute's constitutionality.  *Id.*  Therefore, we "must presume that a statute is constitutional unless the party challenging it proves its unconstitutionality beyond a reasonable doubt."  *Coffman v. Williamson*, 2015 CO 35, ¶ 13.  We "must uphold the constitutionality of a statute unless a 'clear and unmistakable' conflict exists between the statute and a provision of the Colorado Constitution."  *Id.* (quoting *E-470 Pub. Highway Auth. v. Revenig*, 91 P.3d 1038, 1041 (Colo. 2004)).

## B.    Analysis

¶ 32    Relying on cases in which our supreme court has found a constitutional violation when the General Assembly enacted legislation effectively moving civil service jobs to areas outside the state personnel system, Mr. Gieck argues that the GOIT statute reflects the General Assembly's attempt to legislate around the Civil Service Amendment.  GOIT, on the other hand, argues that the

cases cited by Mr. Gieck are inapposite. To resolve this dispute, we must determine whether the GOIT statute is inconsistent with the intent of the Civil Service Amendment and whether the General Assembly set forth guidelines in the statute sufficient to decide the applicability of the Civil Service Amendment. We conclude that the statute provides sufficient guidance by grandfathering existing state employees into the personnel system and remaining silent concerning new hires.

¶ 33    In *People v. O'Ryan,* our supreme court held that the General Assembly cannot change the title of an office to avoid the Civil Service Amendment. 71 Colo. 69, 70, 204 P. 86, 87 (1922); *see also People ex rel. Kelly v. Milliken,* 74 Colo. 456, 457, 223 P. 40, 40 (1923) (the General Assembly has the "power to abolish the office, but it may not avoid the Constitution by abolishing the office and creating a new one with duties substantially the same, to which new officers are appointed"). Mr. Gieck does not allege, nor is there any evidence in the record to show, that the statute creating GOIT modified the title of a position or its duties to avoid the Civil Service Amendment.

¶ 34    Additionally, unlike the cases on which Mr. Gieck relies, the General Assembly specifically grandfathered the employment status of those employees it transferred from other agencies to GOIT and allowed them to retain their rights in the state personnel system — it did not abolish any positions to circumvent the Civil Service Amendment.  And because the General Assembly placed GOIT in the Governor's office, it did not deprive new or non-transferred employees of any previous rights.

¶ 35    Instead, we find more persuasive *Department of Human Services v. May*, 1 P.3d 159 (Colo. 2000), in which the General Assembly moved the educational services of the Lookout Mountain Youth Services Center (Lookout Mountain) (a division of the human services department that is part of the state personnel system) to Metropolitan State College of Denver (Metro) (exempt from the state personnel system under the Civil Service Amendment).  *Id.* at 162-63.  Like Governor's office employees, faculty members and administrators of educational institutions are exempt from the state personnel system under the Civil Service Amendment.  *See* Colo. Const. art. XII, § 13(2)(a)(VII).

¶ 36    In *May*, teachers at Lookout Mountain were allowed, but not required, to apply for teaching positions at Metro. *Id.* at 163. If they chose to do so and were hired, they became exempt from the state personnel system under the Civil Service Amendment. *Id.* Importantly, those who did not wish to teach at Metro or who were not selected to teach could remain in positions within the state personnel system. *Id.* Our supreme court held that this arrangement did not violate the Civil Service Amendment because (1) no employee was forced to leave a position within the state personnel system; and (2) teachers were "fundamentally employees of Metro, not the [Department of Human Services]" (where Lookout Mountain was located) and were therefore "constitutionally exempt from the personnel system." *Id.* at 166. The court also noted:

> Government is subject to unprecedented demands in today's world. We expect innovation, success, efficiency, and economy. Metro and [Department of Human Services] are attempting to meet those demands in a way that violates neither the letter nor the spirit of the Civil Service Amendment.

*Id.* at 168.

¶ 37    Consistent with *May*, the General Assembly established GOIT to address coordination and duplication problems arising from

agencies independently acquiring information resource technologies and to coordinate and direct the use of communication and information resources technologies by state agencies in a cost-effective and efficient manner. *See* § 24-37.5-101(a)-(g), C.R.S. 2019. To accomplish this goal, GOIT was given the responsibilities outlined in section 24-37.5-105, which include interacting and working with other state agencies.

¶ 38 Furthermore, like *May*, the statute creating GOIT did not deprive any civil service employees of the benefits of the state personnel system. Certainly, the General Assembly could have chosen to create an independent government agency outside of the Governor's office whose employees would be covered by the state personnel system. Instead, it created GOIT in the Office of the Governor, thereby excepting its nontransferring employees from the Civil Service Amendment, but concurrently grandfathering into the state personnel system existing state employees whose positions were moved to GOIT. We hold that this does not present a "clear and unmistakable" conflict between the statute creating and empowering GOIT and the Civil Service Amendment to the Colorado Constitution. *See Coffman,* ¶ 13.

22

## IV.  Conclusion

¶ 39   The Board's order is affirmed.

JUDGE GROVE and JUDGE TAUBMAN concur.